## MYERS v. PERRY et al.

The execution of a bond by a defendant for the release of property attached, will not preclude him from moving to set aside the attachment on the ground of the insufficiency of the attachment bond and oath ; but, after the plea of the general issue, no such motion can be made. C. P. 344.

Where in a collision between steamers there was fault, or want of care, on both sides, or no fault on either side, neither can recover damages of the other.

In determining whether a collision on the Mississippi occurred in one or the other of two contiguous States of which it forms a boundary, the middle of the river must be taken as the boundary line.

In the absence of any law, an established usage among those engaged navigating the Mississippi with steamers, must be considered, in determining question of fault or negligence in the management of the boats on that river.

In an action for damages to plaintiff's steamer occasioned by a collision with a boat of the defendants, evidence that the latter boat was racing at the time of the accident is not irrelevant.

Where the purchasers of a steamer assume any liability for damages that may have resulted from a collision with another boat, the owners of the latter may avail themselves of the assumption, and recover from the purchasers damages for the injury sustained. C. C. 1884, 1896. C. P. 35.

In case of the collision of two steamers, the actual injury sustained at the time and place of the injury, is the measure of damages. The damages must be confined to the immediate and direct consequences of the occurrences.

APPEAL from the District Court of the First District, *Buchanan*, J. *Pe-* <span style="float:right">MYERS</span>
rin and *Roselius*, for the appellant.   *C. M. Randall*, for the appellees.

<span style="float:right">*v.*<br>PERRY.</span>

The judgment of the court was pronounced by

SLIDELL, J.   Before entering upon the more important questions involved in this cause, it is proper to notice an incidental matter growing out of the attachment which was levied by the plaintiff.   Under this writ the steamer belonging to the defendants was seized, and was bonded by them.   They then pleaded the general issue, and subsequently took a rule on the plaintiff to show cause why the order of attachment should not be set aside and the bond cancelled, by reason of certain alleged defects in the bond and oath, and the alleged pecuniary insufficiency of the sureties.   The motion was resisted, on the ground that the application came too late : 1st, because the property had been bonded ; and 2d, because issue had been joined in the cause.   The first ground of objection to the rule seems to us insufficient.   See the case of *Pailhes* v. *Rowe*, 14 La. 82.   *Baker* v. *Hunt*, 1 Mart. 194.   *Quine* v. *Mayes*, 2 Rob. 512.   But as regards the joinder of issue in the main action, we do consider it as curing the objections to the attachment made by the defendant, and therefore the motion was properly dismissed.   Code of Pract. art. 344.

The action is brought by the owner of the steamer Diamond against the defendants, owners of the steamer Harry of the West, to recover $4,000 damages, alleged to have been sustained by a collision between these steamers, said to have been occasioned by the negligence and mismanagement of the officers and crew of the defendants' vessel, and which occurred upon the Mississippi river at a point between the States of Louisiana and Mississippi.   The collision took place near Grand Gulf, where it is alleged that the navigation is usually difficult.

A great mass of testimony, as is common in such cases, was produced by the parties.   The court below was of opinion, from the evidence, that, the point of the river at which the collision took place was within the limits of the State of Louisiana ; that the Diamond was a descending boat, and that as the officers had violated the 10th section of the act of March, 1834, by not " shutting off steam, ringing the bell, and floating upon the current, until the ascending boat passed," the plaintiff could not recover.

The section referred to is in these words :  "*Be it further enacted*, &c., That it shall be the duty of the master and pilot of a steamboat, when descending any river or stream in the limits of this State, when within one mile of an ascending steamboat, to shut off the steam and ring the bell, and permit the boat to float upon the current of the river until the ascending boat shall have passed, and the master and owner of the ascending boat shall then assume the responsibility of steering clear of the descending boat, and be liable in damages to the extent of the injury which may be sustained."

If, under the evidence in this cause, we could have come clearly to the conclusion that the collision was attributable in whole or in part to the fault of those in charge of the plaintiff's steamer, we should have confirmed the judgment of the District Court.   But on this point our minds are not satisfied ; and, on a careful consideration of the whole case, we think the ends of justice will be best attained by remanding the cause.   The district judge seems to have formed his conclusion upon the ground that, the Diamond was descending the river ; that the statute above referred to was not observed by the plaintiff ; and that the statute was applicable over the entire width of the river Mississippi, without reference

to the greater proximity of the place of collision to the one or other of the neighboring States.    We do not wish to be considered as expressing any opinion, whether there was fault on the part of either of the vessels.    It is our wish, on the contrary, that the case should go back to the jury as a new matter, for their free consideration.    We consider this a case which should be tried by a jury. As occurs in every case of collision, the testimony is not only very profuse, but extremely contradictory; and the parties as usual canvass the accuracy and candor, and assail the credibility of each others witnesses.    On such subjects, twelve men, taken from the business-walks of life, would be better able than ourselves to come to a sound conclusion,    Their verdict would be of great assistance in settling doubtful questions of fact, and would receive great weight at our hands, should we be again called upon to consider this case.

To facilitate the future trial of the cause, we will proceed to express our opinion on some points of law which have been presented here, and will necessarily be discussed at the future trial.

If there was fault or want of care on both sides, or no fault on either side, the plaintiff cannot recover.    The authorities cited by the plaintiff to the effect that, though the crew of his boat were in fault, yet on proof of fault on the part of the crew of the other boat, the loss must be apportioned, may correctly state the rule recognized in courts of admiralty; but the English and American rule in the courts of common law is, as we have above stated; and a party cannot be heard there as plaintiff, if he has contributed to the collision by his own negligence or improper management.    See Kent's Com. vol. 3, p. 231.    Abbott on Shipping p. 303, note 1, edition 1846.    *Vanderplank* v. *Miller*, 1 Moody & Mal. 169.    *Sampson* v. *Hand*, 6 Wharton 311. 3 East 18.    *Lock* v. *Seward*, 4 Carr. & Payne, 106.    *Luxford* v. *Large*, 5 Carr. & Payne, 421.    *Lane* v. *Crombie*, 12 Pick. 177.    These decisions rest on principles recognized in our jurisprudence, and repeatedly sanctioned by our predecessors.    *Lesseps* v. *Ponchartrain Railroad Company*, 17 La. 364.    *Fleytas* v. *Ponchartrain Railroad Company*, 18 La. 340.    *Ipsum de se queri debere.*

Before applying the act of 1834, sec. 10, to this case, it is obvious that a question of fact must first be determined by the jury, that is, the place of the collision, whether it was within or without the jurisdiction of Louisiana.    In determining this point, the middle of the Mississippi will be taken as the dividing line of the jurisdiction of the two States.    If it should be found that the collision did not occur in Louisiana, and yet a usage of the river should be distinctly proved, establishing the same, or a similar rule, as to ascending and descending boats, such usage should be considered in determing the quession of fault or negligence.    If the act of 1834 should be found applicable with reference to the place of collision, or if not, and there should be sufficient evidence of an equivalent usage of the river, it will then be considered whether, under the facts, and the fair intendment of the law or usage as applied to them, these steamers, at the time of the collision, occupied towards each other the relative position of ascending and descending boats.

Testimony to show that the defendants' steamer was on a racing trip at the time, is not objectionable on the ground of irrelevancy to the issue.

The defendants purchased their steamer after the collision.    Evidence was properly received to show the agreements of sale.    Under this evidence we consider it established that, the defendants assumed whatever liability, if any, had arisen as against the boat or her former owners, by reason of this collision; and

of this assumption the plaintiff is entitled to avail himself. Civil Code, articles 1884, 1896. Code of Practice, art. 35.

In case of loss by collision, it is the actual damage sustained by the party at the time and place of the injury, that is the measure of damages. *Smith* v. *Condry*, 1 Howard, U. S. Rep. 35. They should be confined to such as are the immediate and direct consequences of the occurrence.

It is therefore decreed, that the judgment of the District Court be reversed; and it is further decreed that this cause be remanded for a new trial by jury, and for further proceedings according to law; the defendants paying the costs of this appeal.