## Case No. 8,215.

### LEHMAN v. BERDIN.

[5 Dill. 340;[1] 7 Cent. Law J. 269; 6 Reporter, 611; 7 Am. Law Rec. 310.]

Circuit Court, E. D. Arkansas. April Term. 1878.

FEDERAL COURTS—FOLLOWING STATE PRACTICE—STATE LAWS—ARKANSAS ATTACHMENT—EXECUTION OF BOND TO GAIN POSSESSION—EFFECT ON BOND OF ATTACHMENT NOT SUSTAINED.

1. The circuit courts of the United States give effect to the attachment laws of the state, and are bound by the construction placed upon such laws by the supreme court of the state.

[Cited in Bates v. Days, 11 Fed. 530.]

2. The execution by the defendant in the attachment, in order to regain possession of the property attached, of a bond, under section 416 of the code of Arkansas, conditioned to "perform the judgment of the court," does not estop the defendant from traversing the affidavits for attachment, and defending against the attachment in every respect as if such bond had not been executed and the property had remained in the hands of the officer.

[Cited in Bates v. Days, 11 Fed. 530.]
[Cited in Ferguson v. Glidewell, 48 Ark. 195, 2 S. W. 713, 717.]

3. If the attachment is not sustained, the plaintiff, though he recover judgment for his debt, cannot resort to the bond to compel payment of such judgment.

[Cited in Ferguson v. Glidewell, 48 Ark. 195, 2 S. W. 713.]

The plaintiffs brought suit against the defendant on a promissory note, and sued out an attachment on the alleged grounds that the defendant had sold, and was about to sell, his property, with the fraudulent intent to cheat his creditors. The marshal levied the writ on certain property of the defendant, who thereupon caused a bond to be executed to the plaintiffs, conditioned as required by section 416, Gantt's Dig., which section reads as follows: "If the defendant, at any time before judgment. causes a bond to be executed to the plaintiff by one or more sufficient sureties, to be approved by the court, to the effect that defendant shall perform the judgment of the court, the attachment shall be discharged, and restitution made of any property taken under it, or the proceeds thereof." At this term the defendant filed an affidavit under section 457,

---

[1] [Reported by Hon. John F. Dillon, Circuit Judge. and here reprinted by permission.]

Gantt's Dig., denying the statement of the affidavit upon which the attachment issued. The plaintiffs have filed a motion to strike from the files defendant's affidavits controverting the grounds of attachment.

Cohen & Cohen, for plaintiffs.
Wassell & Moore, for defendants.

CALDWELL, District Judge. The reasons assigned in support of the plaintiff's motion to strike from the files the defendant's traverse of the grounds of attachment are, that the execution by the latter of the bond under section 416, Gantt's Dig., operates (1) to discharge the attachment; (2) estops the defendant from contesting the validity of the attachment on any grounds, or for any purpose; and (3) renders the obligors in the bond liable absolutely for the amount of any judgment the plaintiffs may recover in the action, without reference to the question whether the attachment was rightfully or wrongfully sued out. There are adjudged cases in some of the states that seem to support this view. Hazlerigg v. Donaldson, 2 Metc. (Ky.) 445; Inman v. Strattan, 4 Bush, 445; Dierolf v. Winterfield, 24 Wis. 143; Endress v. Ent, 18 Kan. 236; Payne v. Snell, 3 Mo. 409; Kennedy v. Morrison, 31 Tex. 207.

But the question is one in which the law of this state, as construed by the supreme court of the state, furnishes the rule of decision to this court. The question has not been before that court since the adoption of the Code, but it arose under prior statutes, which were the legal equivalent of section 416 of the Code. Under the Revised Statutes of this state the defendant in an attachment suit might retain the property attached upon giving bond conditioned "that he will pay and abide the judgment of the court, or that his security will do the same for him;" and it was further provided that "when the defendant shall have filed the bond as required in the last preceding section, the attachment shall be released, and the suit proceed as other suits at law." Gould's Dig. c. 17, §§ 13, 14.

In Delano v. Kennedy, 5 Ark. 457, the question was presented, whether giving the bond provided for by these sections precluded the defendant from pleading in abatement the want of a sufficient attachment bond, and the court held it did not, and that the legal effect of giving such bond was to discharge the property from the lien of the attachment and substitute the defendant's bond in its stead; that in all other respects the rights of the parties in the attachment proceeding remained the same as though no bond had been given, and the property had remained in the hands of the officer. Chief Justice Ringo dissented from the judgment of the court, and, in his dissenting opinion, states very concisely the views maintained respectively by the majority and minority

of the court. He said: "The majority of this court, if I correctly understand their opinion, hold that, the legal operation of this act of the defendants is to release so much of the attachment only as operates upon and binds their property, by substituting instead thereof the bonds and personal security taken by the sheriff, but that it has no effect whatever upon the attachment bond filed by the plaintiff. I hold that the legal operation thereof is to release the whole attachment, and place the parties to the action, respectively, in the same situation as if the original process had been a writ of capias ad respondendum, instead of an attachment, and that the proceedings in the writ thenceforward must be the same as if no such bond had been given, and no process other than a capias issued."

In Childress v. Fowler, 9 Ark. 159, the court was asked to review the ruling in the case of Delano v. Kennedy, supra, and, in view of the dissent of the chief justice in that case, it did so, and, after full argument, reaffirmed the doctrine in that case, in an elaborate opinion, concurred in by all the judges, and which concludes in this language: "We therefore hold that the execution of the bond authorized by the 13th section does not impair any of the defendant's rights of defence, and that, after its execution, he may defend the action either by plea in abatement interposed in apt time and in due form, or by plea in bar, in the same manner in every respect as if he had not executed the bond and had suffered the property attached to remain in the hands of the sheriff."

After these decisions were pronounced, and by act of March 7, 1867 [Laws Ark. 1866–67, p. 294], the attachment law of the state was amended so as to allow the defendant to put in issue the truth of the plaintiff's affidavit to procure the attachment, thus making the law in this respect what it now is under the Code; and this amendatory act further provided that the defendant might "give bond to dissolve the attachment." And section 6 declared: "That the conditions of bonds of persons dissolving attachments shall hereafter be, that he will appear and answer the plaintiff's demand at such time and place as by law he should, and that he will pay and abide the judgment of the court."

It will be observed that the language of this section, like that of the Revised Statutes, is better calculated to support the plaintiff's contention than is the language of section 416. And in the case of Ward v. Carlton, 26 Ark. 662, the very question before the supreme court of the state for its determination. The defendant, whose property had been attached, had given the bond required by the act of March 7th, 1867, and the court below had thereupon declared the attachment "dissolved." Afterwards the defendant filed his plea denying the truth of the plaintiff's affidavit upon which the attachment was issued. The court say: "The plaintiff urges on the court that the giving of the bond precludes all inquiry into the truthfulness of the affidavit. If it be admitted that the defendant, after giving bond, cannot question the truthfulness of the original affidavit, the result is that the plaintiff, by his perjury, is allowed to hold the principal and his sureties for the amount of his judgment." And after entering into a forcible argument to show that such a construction of the statute would not be in harmony with the objects and purposes of the attachment law, and would favor the unscrupulous creditor, and result prejudicially to conscientious creditors and honest debtors alike, the court, in conclusion, say that, after the execution of such bond, "the defendant may show, at any time before judgment, that the original affidavit is not true." These authorities are decisive of the question in this state.

It is argued that the Kentucky ruling on the question should be followed by the courts in Arkansas, because the Code of the latter state is a copy of the Code of the former, and the section under discussion identically the same in both. If the section of the Code in question was new law in this state, there would be some force in the suggestion; but, as we have seen, this provision is in legal effect precisely what the former law of the state was—is, in fact, a mere re-enactment of the old law; and if the legislature is to be credited with legislating in reference to knowledge of the decisions of the courts upon this question, the presumption must be indulged that they were more familiar with the decisions of their own courts than with those of a sister state, and that they did not, by simply re-enacting a statute of the state, intend to change its meaning, or adopt an exposition of such statute by the courts of a sister state opposed to the views of the supreme court of their own state.

Moreover, the provision is not peculiar to the Kentucky Code, but was found in the Codes of New York and Ohio, and probably other states, before its adoption by the former state (see sections 199 and 212, Code Ohio, and 240 and 241, Code N. Y.); and the construction of the section by the New York and Ohio courts is in harmony with the decisions in this state, and opposed to the view of the Kentucky courts.

Under the New York Code the attachment may be discharged upon the execution of a bond by the defendant conditioned that the sureties "will, on demand, pay to the plaintiff the amount of judgment that may be recovered against the defendant in the action." Section 241, Code N. Y. A defendant whose property had been attached gave bond conditioned as required by the section last above quoted; the attachment was thereupon discharged. Afterwards the defendant filed his motion and affidavits to vacate the attachment proceedings, on the ground that sufficient

facts to authorize its issue did not exist at the time it was granted, and the court entertained this motion and sustained it, and an order was made vacating the attachment proceedings. Plaintiff in the action recovered judgment for his debt, and it remaining unpaid, suit was brought on the bond given by the defendant to procure the discharge of the attachment, and the court held that the attachment having been set aside upon the ground stated, the consideration for the execution of the bond had failed, and that it could not be enforced. Bildersee v. Aden, 10 Abb. Pr. (N. S.) 163. And the previous rulings in that state were to the same effect. Cadwell v. Colgate, 7 Barb. 253; Homan v. Brinckerhoff, 1 Denio, 184. And the same doctrine is maintained in Ohio. Fortman v. Rottier, 8 Ohio St. 553; Alexander v. Jacoby, 23 Ohio St. 358. In the case last cited the court say: "The interest of a party may imperatively require that his property shall be released from a wrongful attachment without delay. May he not, in such case, promptly procure the discharge of the attachment by payment of the claim on which it is founded, or by executing an undertaking according to the statute, and thus arrest the threatened ruin, without abandoning his rights to redress for the injury already done?" And the court declares the execution of such bond "cannot be regarded as an admission of record that the order of attachment was rightfully obtained."

The Louisiana Code provides that the defendant may have the property released upon the execution of a bond conditioned "that he will satisfy such judgment to the value of the property attached as may be rendered against him in the suit." And the uniform ruling in that state has been that the giving of such bond does not preclude the defendant from afterwards contesting the validity of the attachment on the ground that it was obtained on a false allegation, or upon any other sufficient ground. Pailhes v. Roux, 14 La. 83; Love v. Voorhies, 13 La. Ann. 549; Myers v. Perry, 1 La. Ann. 372; Brinegar v. Griffin, 2 La. Ann. 154; Avet v. Albo, 21 La. Ann. 349. When a bond is given under section 406, the property is not discharged from the lien of the attachment; the defendant may lawfully retain possession of it, but, until the attachment is disposed of, it cannot be again attached or levied upon, except subject to the prior levy, and the defendant cannot sell it divested of the lien of the attachment. Hagan v. Lucas, 10 Pet. [35 U. S.] 400; Drake, Attachm. § 331. And if the attachment is sustained, the court must, in addition to rendering judgment for the debt, condemn the property attached to be sold to satisfy the judgment (sections 455, 456, Gantt's Dig.; Gass v. Williams, 46 Ind. 253); and now, under the act of November 10, 1875 [Laws Ark. 1875, p. 7], may at the same time assess the value of the property, and "render further judgment that in case said property

shall not be delivered," etc., execution shall issue against the sureties, etc.

When the bond is given under section 416, the property attached is discharged absolutely from the lien of the attachment, and the bond stands as security to the plaintiff in lieu of the property; and if the plaintiff recovers judgment for his debt, this alone does not give him a right to enforce the bond; but he must also, in order to bind the obligors in the bond, have judgment sustaining the attachment (section 456), and he is then, under the act of 1875, entitled to a judgment against the defendant and his sureties in the bond for the amount recovered and costs. In such case the property attached is not condemned to be sold, because it has been released from the lien of the attachment and the bond substituted in its place; and this is all the difference in legal effect between a bond executed under section 406 and one executed under section 416. Bell v. Western River Imp. Co., 3 Metc. (Ky.) 558; Gass v. Williams, supra.

In neither case can the plaintiff resort to the security of the bond, unless his attachment is sustained; and in neither case is the defendant estopped from showing, at the proper time and in the proper manner, that the attachment was procured, upon false allegations of fact or otherwise, in violation of law. Sections 456, 457, Gantt's Dig.; Bildersee v. Aden, supra; Delano v. Kennedy, supra; Childress v. Fowler, supra; Ward v. Carlton, supra; Pailhes v. Roux, supra; Cadwell v. Colgate, supra; Homan v. Brinckerhoff, supra; Alexander v. Jacoby, supra.

If the defendant is estopped from contesting the attachment after giving bond under section 416, the estoppel will apply as well after the execution of the bond under section 406; for, so far as relates to the effect of the defendant's bond on his right to contest the attachment, there is no difference in the two sections.

The condition of the bond is that the defendant will "perform the judgment of the court." Judgment of the court upon what, and for what? The answer is found in section 456: "Upon the attachment being sustained, the property attached or its proceeds, or the securities taken upon the attachment, shall be applied," etc.

The judgment, then, which the defendant's sureties must "perform" is a judgment that the plaintiff rightfully attached the defendant's property for the debt found to be due, and is, therefore, entitled to the security resulting from the attachment—in other words, a judgment sustaining the attachment—a judgment which would reach the property attached, if no bond had been given. Gass v. Williams, 46 Ind. 253; Inbusch v. Farwell, 1 Black [66 U. S.] 572, 573.

Indebtedness alone is no ground for attachment; other facts must concur to render the attachment lawful, and giving this bond does not, in this state, supply the place of these

other facts, nor estop the defendant from denying their existence. The motion to strike out the defendant's affidavits traversing the attachment is overruled. Motion overruled.