## KINNANNE v. STATE.

### Opinion delivered January 27, 1913.

1. LIQUOR—SELLING WITHOUT LICENSE—COUNTY BOUNDARY.—The eastern boundary of Mississippi County, Arkansas, is the midway line between the principal banks of the Mississippi River on the Arkansas and Tennessee sides; and when defendant sells whiskey on a steamboat on the west side of the midway line, he is selling whiskey in Mississippi County, Arkansas, and may be convicted of selling whiskey without a license in said county. (Page 290.)

2. SAME—SAME.—Where defendant has a regularly equipped bar room upon a steamboat where whiskey and many kinds of beer are exposed for sale, proof of one sale will support an indictment for selling whiskey without a license. (Page 289.)

Appeal from Mississippi Circuit Court, Osceola District; *W. J. Driver,* Judge; affirmed.

#### STATEMENT BY THE COURT.

Appellant was convicted upon an indictment charging him with running a dramshop and drinking saloon in the Osceola District of Mississippi County, without a license.

It appears from the testimony that Robert Dixon bought either a pint or a quart of whiskey from appellant's bar on a steamboat called the Harry Lee. The purchase was made from the barroom on said boat where they had many kinds of whiskey and beer for sale. The purchaser got on the boat at the landing north of Osceola

to go to Midway and paid ten cents for his passage.
After the boat left the landing eight or nine minutes and
got out into the stream and before reaching Midway,
they opened the barroom and he made his purchase. He
bought the liquor when the boat was about 300 to 350
yards out from the Arkansas bank, his attention at the
time being called to the fact that the Tennessee shore
was in sight. The captain said, "You see where we is?"
He asked him this question two or three times. Witness
was on the Tennessee side of the boat going north and
the stage of the water was very low. Witness was asked
whether he was nearer the Arkansas or the Tennessee
shore when he made the purchase and said, "Here is
the Tennessee side (indicating), over here is the big bar.
From that big bar is a mile and a quarter to where the
shore is. They can't get close because they would run
aground. They were about 350 yards from the Arkan-
sas shore as near as I can get at it. Was about twenty
yards out of the channel on the Tennessee side. I hear
them all say it is the channel and that is where they all
go through."

Other testimony shows that the river is from a mile
and a half to two miles wide at this point, and it is about
three-quarters of a mile to the sandbar, or high land, the
lower end of which is covered with water at ordinary
stages. That 300 yards out would be nearer the Arkan-
sas than the Tennessee shore without considering the
sandbar. It takes a pretty good stage of water to cover
the island and bar, and is at least a half a mile from the
Arkansas shore to the water's edge on the island. An-
other witness said he did not know that he knew the chan-
nel but he did know the river and from the landing to
the sandbar was about three-quarters of a mile, to the
island a mile and to the Tennessee bank a mile and a
half and he thought the island was the Tennessee shore.

The court refused appellant's requested instruction,
as follows: "Mississippi County, Arkansas, is separ-
ated from the State of Tennessee by the Mississippi
River and the court instructs you that the line of demar-
cation between said county and the State of Tennessee

is the middle of the main navigable channel of the Mississippi River; and you are further instructed that if the alleged offense was committed in that channel of the Mississippi River in which the boat testified about was running, if you find that the offense was committed at all by the defendant such channel is the main navigable channel of said river, and if the offense was committed at a point in said channel nearer the water's edge in said channel on the Tennessee side thereof than the water's edge on the Arkansas side thereof, the defendant is not guilty of the offense charged, and your verdict will be not guilty.''

And gave over its objections an instruction relating to the venue, as follows:

''* * * You are instructed further that in determining this question it will be necessary for you to determine the location of the boundary line between the State of Arkansas and Tennessee in front of the Osceola District of Mississippi County, in Arkansas, at the place of the alleged keeping of the dramshop or drinking saloon; and on this question you are instructed that the boundary line between the States of Arkansas and Tennessee at the alleged place of keeping a dramshop is the middle of the main channel of the Mississippi River or the equidistant point between the ascertained and well defined banks on the Tennessee and Arkansas shores of said river without reference to the track of navigation or line of river followed by steamboats; and in determining the location of the well-defined banks of the Mississippi River on the Arkansas and Tennessee shores, you will take into consideration the erosion or accretion affecting the shores of said main banks as the same adds to or takes from such banks.''

The jury returned a verdict of guilty and from the judgment thereon appellant appealed.

*E. L. Westbrook,* for appellant.

1.   Proof of a single sale is not sufficient to sustain a conviction for keeping a dramshop and drinking saloon. 45 Ark. 90.

2. Appellant's second instruction should have been given, and the court erred in refusing it and in giving its instruction No. 2. If the offense was committed at a point east of the middle of the main navigable channel of the Mississippi River, it was in the State of Tennessee. 104 Ark. 140; 40 Ark. 501; 147 U. S. 239, 5 Am. St. Rep. 536; 147 U. S. 13, 37 Law. Ed. 59.

*Hal L. Norwood*, Attorney General, and *Wm. H. Rector*, Assistant, for appellee.

1. The evidence is fully sufficient to show that appellant was running a drinking saloon upon the boat, and, therefore, to sustain the verdict. 45 Ark. 90; 51 Ark. 177.

2. The court correctly charged the jury as to the boundary line between Arkansas and Tennessee. See 1 Am. St. Papers, Public Land, p. 17; 1 U. S. Stat. at Large, 491; Shannon's Code of Tennessee, § 80; Acts 1836 (Ark.), chap. 20.

The generally accepted doctrine is that the boundary line is one equidistant from the principal or well-defined banks of the river. 40 Ark. 501; 53 Ark. 314; 119 Tenn. 47; 24 How. 41; 143 U. S. 359; 196 U. S. 23; 1 La. Ann. 372; 3 S. & M. (Miss.), 366; 55 Ia. 558; 119 Fed. 812; 119 Tenn. 137.

As to what constitutes a bank, see 11 Ala. 780; 13 N. Y. 296; 14 Pa. St. 171; 6 O. 504; 63 Mass. 552. See also this court's remarks on the question as to the proper boundary line in *Wolfe* v. *State*, 104 Ark. 140.

KIRBY, J., (after stating the facts). It is contended the testimony is insufficient to show the keeping of a dramshop without license, there being only a single sale proved and that the court erred in the giving and refusing of instructions relative to the boundary line between the States of Arkansas and Tennessee.

It is true that the testimony does not show but that one sale of whiskey was made, nor was there any attempt to prove others, but it is undisputed that this sale was made in a regularly equipped barroom upon a steamboat, where whiskey of many kinds and beer was kept and

exposed for sale and there was no necessity for showing other sales. *Blackwell* v. *State,* 45 Ark. 90; *Mazzia* v. *State,* 51 Ark. 177.

The next assignment is that the court erred in its declaration of law as to the boundary line between the States of Arkansas and Tennessee. The testimony shows that the sale occurred about 350 yards from the Arkansas shore in the stream of the river used for navigation. That from this point to a sandbar opposite the Arkansas bank is a half to three-quarters of a mile, to the island a mile and to the Tennessee bank of the river a mile and a half or two miles; one witness thinking the island was the Tennessee shore. The island is submerged at a good stage of water.

This court in a well-considered opinion has already declared the law relating to our eastern boundary upon the Mississippi River, after reciting that the Act of Congress admitting the State into the Union, approved June 16, 1836, designated the eastern boundary as "the middle of the main channel of the Mississippi River," which description is also embodied in our Constitution since that time, and, after a discussion of the meanings of the words "channel" and "main channel," said: "The middle of the main channel then must mean the point or line along the river bed equidistant between the permanent and defined banks of the ascertained channel on either side * * * it seems that the largest channel determines which is the river and the central line of that makes the State boundaries * * * where there are several channels the principal one is considered the river and in this the *medium filum* makes the boundary." *Cessill* v. *State,* 40 Ark. 505.

The Supreme Court of Tennessee has also considered and determined the matter of its western boundary, which is the eastern boundary of our State, in the case of *Tennessee* v. *Muncie Pulp Co.,* 119 Tenn. 47. It considered the boundary line fixed by the treaty of 1763, the middle of the Mississippi River and the boundaries of the two States as fixed by the acts of Congress admitting

them into the Union, and, in a well-considered and exhaustive opinion, after reviewing this court's decision in *Cessill* v. *State, supra,* said: "The decisions of all the courts of last resort of the several states, as well as those of the United States involving this boundary line, with the exception of those of *Buttenuth* v. *St. Louis Bridge Co.* and *Iowa* v. *Illinois,* 147 U. S. 1; 202 U. S. 59, have been favorable to the contention that the line runs midway between the banks of the river and it is only at a late day by those cases that a doubt was suggested or arose as to the true and correct line which formerly separated the British possessions in America from those of France and Spain, and subsequently a number of the largest and most influential States of the Union. The former construction has become a rule of property and should not be disturbed. * * * Where a navigable river constitutes the boundary between two States, the middle of the channel separating their respective jurisdictions both are presumed to have free use of the whole of it for the purposes of commerce. * * * The reasons for having a fixed, certain and visible line, such as the middle of the channel as measured from the respective banks of the river, we think, greatly outweigh those advanced in support of the decision of the case of *Iowa* v. *Illinois.* * * * But the question has been settled by the duly constituted authorities of Tennessee and Arkansas by judicial decisions, legislation and other authorized official actions, long acquiescence, the exercise of jurisdiction unchallenged, and other acts amounting to an agreement or convention. The highest court of Arkansas, in a case to which the State was a party, and at its instance, in the assertion of its sovereignty and jurisdiction has defined the limit between the two States to be the line midway between the visible banks of the river, and enforced the criminal laws of the State up to that line. * * * Both States agree upon it as the true and correct line separating their territories, and others can not be heard to complain."

See also *St. L., I. M. & S. R. Co.* v. *Ramsey,* 53 Ark. 314; *Jones* v. *Soulard,* 24 How. 41; *Nebraska* v. *Iowa,* 143

U. S. 359; *Missouri* v. *Nebraska,* 196 U. S. 23; *Myers* v. *Perry,* 1 La. Ann. 372; *Morgan* v. *Reading,* 3 S. & M. (Miss.), 366; *Bridge Co.* v. *Dubuque Co.,* 55 Iowa, 558.

The instruction given by the trial court was in accordance with the law as already declared by our court in the case of *Cessill* v. *State, supra,* and the boundary thus defined has been recognized and acquiesced in by the State of Tennessee, as the western boundary of that State, and the court did not err in giving said instruction.

The undisputed evidence shows that from the Arkansas shore of the river to the sandbar opposite, which confined the stream upon which the boat was operating was a distance of half to three-quarters of a mile, that it was half a mile further to the island and a mile from there to the Tennessee bank and that the sale was made not more than 350 yards from the Arkansas bank of the river.

Unquestionably, it occurred within the jurisdiction of this State and the judgment of the lower court is affirmed.