**RUSSELL ET AL. *vs.* WILSON.**

APPEAL FROM THE COMMERCIAL COURT OF NEW ORLEANS.

The act of 1826, which declares that in cases where the debt is not yet due and the creditor swears his debtor is about to remove his property out of the State before said debt becomes due, "an attachment may issue," does not apply to Steam-Boats and Vessels, which from their nature must necessarily be taken from the State.

This suit commenced by attachment. The plaintiffs allege they are residents of the State of Kentucky, and hold a note on the defendant, who resides in Mississippi, for $6420, executed and signed at Vicksburg, by the defendant and others, payable at the Merchants' Bank in New Orleans, on the 1st March, 1841; which note they further allege, is secured by mortgage executed by said Wilson on the steam-boat Rodolph, the 20th March, 1840. They pray that the boat be attached, &c. The attachment was applied for on the 23d February, 1841; being several days before the debt became due. The plaintiff, Russell, made the usual affidavit, "that the defendant resides permanently out of the State; and was about to remove his property from the State of Louisiana, before said debt became due." The attachment issued and was levied on the steamboat Rodolph, and she was also sequestered. On the 12th March, 1841, the defendant's counsel took a rule on the plaintiffs, to show cause, why the attachment and sequestration should not be set aside, on the ground of insufficiency of the security; that the debt was not due, and the suit premature at its inception; and that the affidavit was not true.

On hearing the rule, evidence was taken relative to the issues, and facts involved. It appeared, there was no intention to remove the boat, with a view of avoiding this debt. She was running in the Yazoo trade, and making her regular trips.

There was judgment, making the rule absolute. The plaintiffs appealed.

*Peyton* and *Smith*, for the plaintiffs.

RUSSELL ET AL.
*vs.*
WILSON.

1. That statute requires only, that "the creditor has reason to believe, and does verily declare, that the debtor *intends to remove* his property." Now "the creditor swears, that said debtor *is about to remove* his property." Acts, 1826, p. 170, sec. 7.

2. That statute referred only to the debtor who, it was believed, intended to remove his property, *at any time*, whether before or *after* the debt should become due. The law now applies only to creditors, who are about to remove their property "before said debt becomes due."

3. That statute applied only to the debtor who was "about to *depart permanently* from the State or to remove *his* property." This, says the Supreme Court, 5 Martin, N. S., 454, means only debtors who reside in the State at *the time of the contract*. Granted.—But the law is different now. The departure of the debtor now does not authorize an attachment, however permanent the departure may be. The word "his," before property is not restricted now to the description of the debtor in the previous clause of the sentence. On the contrary, now the attachment may issue if oath be taken in conformity to any of the requisites of number one, two or three of article 240. The requisite of number two is "when such debtor *resides* out of the State." So that the *"residence"* at the time of the attachment is the only question which can be now raised as to residence. The section of the act of 1826 is expressly styled an amendment of articles 242, 243 and 244 of the Code of Practice : while the section of the act of 1817 has no reference to the 2d section of the same act, which corresponds to the articles of the Code of Practice cited. So that the law now applies to *any debtor* who (1st) is about leaving permanently the State, or (2d) who *resides out of the State,* (3d) who conceals himself to avoid being cited, and the law by the act of 1817 applied only to the debtor who had resided here and was "about permanently to depart" or remove his property. This construction of the law as it now stands was adopted by this court in the case of Tyson et al. vs. Lansing ; 10 La. Rep., 444.

The law is now, as to attachment, somewhat similar to the law before the act of 1840, relating to arrest on which this court decided that the debtor who absents himself *even for a limited time* might be held to bail; 13 La. Rep., Roberts et al. vs. Page.

*C. M. Jones*, for the appellee, contended that the suit was premature. The note was payable at a particular place, and payment must first be demanded before suit, at the place designated; 15 La. Rep., 242.

2. It was well known between these parties, as the evidence shows, that the note was given as part of the price of the boat, and that she was to run in the Yazoo trade, in which she was engaged at the time. The plaintiffs were cognizant of this fact. The boat was not to be confined to the limits of the State. How could the oath be taken in reference to this property, that the defendant was about to remove it from the State?

3. If this attachment is sustained it will have a very injurious effect on trade. The object of running a steam-boat and of trade can be defeated at the instance of a creditor, and great loss ensue. The very end and object is to keep the boat runing. A cotton factor who sells cotton to a non-resident and takes his bill at four months, might as well attach and prevent the cotton from going out of the State, although he knew it was to be shipped to a foreign port, and was not to remain in the State until the bill fell due.—See case of McClintock et al. vs. Cairnes et al., 5 Martin, N. S. 450.

*Morphy, J.* delivered the opinion of the court.

The plaintiffs are appellants from an order setting aside writs of attachment and sequestration obtained by them against the steam-boat Rodolph belonging to the defendant. These proceedings had been instituted about ten days before the maturity of a note of $6420 62, drawn by defendant to their order in Vicksburg, and made payable on the first of March last, at the

EASTERN DIS.
May, 1841.
───────────
RUSSELL ET AL.
*vs.*
WILSON.

Merchants' Bank of the City of New Orleans. This note was secured by mortgage on the boat attached. The parties to this suit are all non-residents; the plaintiffs residing in Kentucky, and the defendant in Mississippi. We have already had occasion to decide that the provisions of our Code of Practice as amended by the statute of 1826, authorize the issuing of an attachment in cases where both plaintiff and defendant reside out of the State, and where a debt is not yet due ; 10 La. Rep. 447 ; but while we make this declaration, we cannot refrain from expressing the regret that our attachment laws have received such an extension. Its policy may well be questioned. Independent of the vast increase of litigation it creates in our courts to the delay and prejudice of the business of our own citizens, and the many vexatious and oppressive proceedings it gives rise to, such legislation tends materially to injure the true interests of the country in a commercial point of view ; foreign merchants must surely feel some reluctance in sending their goods and merchandize within the limits of our State, or in placing funds in the hands of agents here for the purpose of purchasing the products of our soil, liable as their property is to be attached and subjected to sacrifice and heavy costs, for debts wherever contracted and however remote the period of their maturity.

The act of 1826, which declares that in cases where the debt is not yet due and the creditor swears his debtor is about to remove his property out of the State before said debt becomes due, " an attachment may issue," does not apply to Steamboats and vessels, which from their nature must necessarily be taken from the State.

In the present case we are of opinion that the boat was not liable to be attached before the note sued on became due. The expressions used in the statute of 1826, *"that the debtor is about to remove his property out of the State before the debt becomes due,"* must be understood as applying to property which the creditor might have supposed would not be carried out of the State, and to which he might have looked for his security at the time of contracting or since ; but it would be unreasonable to extend them to a species of property which from its nature and destination must necessarily be taken out of the State, and which the creditors of the owner could not have believed would remain continually within its limits. To consider steam-boats and vessels in ordinary cases as coming within

the meaning of the statute of 1826 would be to declare at once that their owners are to be deprived of the free use of their property as long as they have any outstanding claims against them. If this exception is not written in the law, it must be implied, for it results from the nature and fitness of things, and is imperiously called for by the interests of trade. In applying a statute so much in derogation to the general principles of jurisprudence, we feel bound to give it such a construction, as will lessen the evils and inconvenience likely to flow from it.

But in the present instance, it appears to us that the plaintiffs were bound in good faith to abstain from the proceedings they instituted before the maturity of their claim, even were they strictly legal. This boat appears to have been sold to defendant by the plaintiffs. It has been asserted in argument and not denied that the note sued on was given in part payment of the price; at all events it was secured by a mortgage on the boat; when this mortgage was taken by the plaintiffs, they well knew that this steamer was engaged in the Yazoo trade; it was not contemplated by either of the parties that she was to lie a whole year idle in the port of New Orleans; on the contrary, it must have been their mutual understanding that during all the time allowed for the payment of this note, the boat was freely to continue in a trade in which New Orleans was one of the *termini*, and Yazoo, in the State of Mississippi, the other. No fraud or intention to defraud is alleged, nor is there any reason given for these proceedings, except that defendant was about to remove his property out of the State. The plaintiffs might with the same propriety have attached the Rodolph the day after taking the note and mortgage. The evidence shows that when the boat was seized, she was taking in freight and was to have started that very day on one of her regular trips, that she had a return cargo engaged, and would in all probability have been back in our port at the time the note fell due. Not a tittle of evidence has been adduced to raise the suspicion that any thing unfair was in the contemplation of the defendant. If plaintiffs could attach or sequester the boat mortgaged be-

EASTERN DIS. fore the expiration of the credit they agreed to give defendant,
May, 1841. it is difficult to perceive why a cotton factor who sells a thou-
MONBOUCHET'S sand bales of cotton to a non-resident for any European mar-
CURATOR
vs. ket, and receives his bill payable at a future day, cannot attach
FERRAUD FILS. the cotton when about to be shipped on the ground that the
debtor is removing his property out of the State.   Such an un-
just and faithless course of conduct could not be tolerated with-
out a total disregard of the first principles of justice and fair
dealing.

The judgment of the Commercial Court is therefore affirm-
ed with costs.