## BRINEGAR *v.* GRIFFIN.

In an action for the settlement of a partnership plaintiff cannot proceed by attachment, where, from the nature of the business, it is impossible that he can swear, with certainty, to the amount which will be found due to him on a final settlement. *Per Curiam:* We do not, however, wish to be considered as deciding that a partner can, in no case of joint-adventure, proceed by attachment. Cases may occur where the business of the adventure is so limited and simple, that a party may be considered as able to swear to a positive and precise balance.

The mere bonding of property attached will not preclude the defendant from moving to dissolve the attachment.

A motion to amend a rule to show cause why an attachment should not be dissolved, by adding a new ground, may be allowed even after the trial of the rule has commenced, where no issue has been joined in the case, and where the additional ground was based on matter apparent on the face of the petition, and its allowance was not calculated to delay the trial of the rule, nor to take the other party by surprise.

Where the business of a particular partnership was transacted almost entirely within this State, and the investigation of an important portion of the partnership accounts can be conducted with greater convenience and at less expense here than elsewhere, the mere fact of the partners being residents of another State will not, where the defendant appears in person, deprive our courts of jurisdiction of a suit to settle the partnership.

APPEAL from the District Court of Iberville, *Burk*, J.

*W. E. Edwards* and *Labauve*, for the appellant. The mere fact of the defendant's being a non-resident, made his property liable to attachment. Code Pract., art 240, no. 2. The law attaches no condition to the capacity of the attaching creditor, except that he be a creditor, and that his claim be established as provided by the arts. 242 and 243 of the Code of Practice. The court can make no distinction, where the law makes none. The law contemplates that the creditor may himself be a non-resident, and provides how the claim should be sworn to. Code Pract. art. 244. 10 La. 447. The case of *Levy* v. *Levy*, 11 La. 577, relied on to dissolve the attachment, is not similar to this case. There the plaintiff, by her own showing, contradicted her oath, and satisfied the court that she did not, and could not, know the amount due by the defendant. In this case, the plaintiff shows that everything is in his own knowledge; he makes his own calculations and liquidation of the special partnership, to base his oath upon. 2 Mart. N. S. 326.

This suit was commenced in the ordinary form, the defendant being present, and cited in person. The attachment is an accessory, and the dissolution of it cannot arrest the progress of the ordinary suit. Code of Practice, 253, 258. 8 Mart. N. S. 352. 14 La. 128.

*Deblieux*, for the defendant, contended that the attachment should be dissolved and the petition dismissed: 1st, Because the writ of attachment is designed merely to supply the place of personal service in actions properly brought before our courts, and not for the purpose of withdrawing, without necessity, from foreign tribunals, the legitimate subjects of their jurisdiction. 2d, Because the action being for a settlement of a partnership, plaintiff cannot swear to the amount actually due to him. See 11 La. 577. 3d, Because arts. 253, 258 of the Code of Practice, on which plaintiff's counsel rely to show that, even if the attachment be dissolved, the suit must stand, are evidently not applicable to a case like the present. These are provisions applying to suits which might have been brought in the ordinary way, by mere personal service, *before a tribunal having jurisdiction*, and which could compel an appearance, or supply the want of it by a default. Such is the application of the authority quoted. *Wil-*

*liams* v. *Kimball*, 8 Mart. N. S. 352. In the case of *Gibson* v. *Huie*, 14 La. 128, there was a suit on a contract made here; and although the plaintiff stated that defendant was a resident of North Carolina, the defendant pretended that he resided in this State; he had answered on the merits, and the cause had been decided *without regard to the attachment.*

<div align="right">
BRINEGAR
v.
GRIFFIN.
</div>

The judgment of the court was pronounced by

SLIDELL, J. This case comes before us on an appeal from a decree dissolving an attachment, and dismissing the suit. One of the grounds for dissolution is that, the suit is for the liquidation and settlement of a partnership, and that in such a case the plaintiff cannot have the auxiliary remedy of attachment, because the affidavit indispensable to the granting of this writ cannot properly be made by a party, who, from the nature of the case, must be ignorant of the precise amount due to him.

For a proper consideration of this subject it is necessary to refer briefly to the affidavit and the petition, in connexion also with the evidence received on the trial of the rule. The affidavit, in stating the indebtedness, declares that, the defendant is really and justly indebted to the plaintiff in the sum of $2,900, as will be shown in the petition to be filed. The petition states, that in the year 1845, and in Keutucky, where the parties both reside, they entered into a partnership for the purchase of a gang of slaves, to be brought to this State and here sold, for the common account; that they arrived in Louisiana in the fall of that year, and closed the sale of the slaves in the following spring; that the defendant is chargeable with the proceeds of the property so held in common and sold for the common account, which proceeds said defendant received. A statement is then given, item by item, of the price and proceeds, and of the vendee of each slave. Most of the sales are stated to have been on credit, and that notes and drafts of the purchasers were received by the defendant. In one instance, a sale or barter is charged as having been made by defendant, for sugar received and disposed of by him. In some cases, the notes or drafts are only charged as having been received by the defendant; in others, as having been paid to him. The petitioner further declares that, he has himself received the *price and proceeds* of divers slaves, and certain moveables belonging to the partnership, amounting to the sum of $14,499 53; and "that, after allowing and charging himself for everything and all sums of money he is accountable for to the said special partnership or speculation, or to the said *David Griffin*, the said *Griffin* remains justly indebted to petitioner in a balance of $2,900; that he has often demanded an amicable settlement and the payment of said balance from the defendant, who has always refused to do anything."

The prayer of the petition is as follows: "That the defendant be cited to appear, and to produce all the claims and demands he may have against the plaintiff, or against the said special partnership or speculation; and that a *liquidation and settlement* of said speculation may take place; and that, after due proceedings, the defendant be decreed to owe the plaintiff the said balance of $2,900, with interest from judicial demand, &c." It closes with a prayer for general relief.

This then is a suit for the liquidation and settlement of a partnership, the ascertainment of a balance, and a decree therefor. It is true that the plaintiff professes to have calculated, and to his own satisfaction ascertained, the balance; but it is quite obvious that the partnership affairs involve mutual items of debit and credit, numerous and diversified in their nature, such as the original outlay of capital, the necessary disbursements for the transportation and care

BRINEGAR
v
GRIFFIN,

of the partnership property, the ascertainment of collections of the notes and drafts taken, and the enquiry into the faithful gestion of the partnership affairs by the partners respectively.　　It would seem impossible, under the showing of the petition itself, and especially as it does not allege that any accounts have been rendered, nor any balance of account actually struck by the partners, that the plaintiff should be able to declare with certainty, the amount which, on a final liquidation and settlement of these affairs, will be found due to him.　　This uncertainty, apparent on the face of the petition, is, if possible, rendered more obvious by a letter of the plaintiff's, which was offered in evidence by the defendant.　　In this letter, after suggesting the expediency of avoiding litigation by an amicable adjustment of their affairs, the plaintiff remarks: " It seems to me that *in a business of the amount that we did last summer*, either the one or the other must be indebted to the other.　If I to you, I am ready at any time to settle," &c.　　We do not, however, regard this evidence as necessary to sustain a conclusion which has a sufficient basis in the plaintiff's petition.

In applying the law to the state of facts thus disclosed, it is necessary to bear in mind that the remedy by attachment is one, which, according to the uniform tenor of decisions, has been strictly construed.　　To justify the remedy, the creditor must be able to state on oath, expressly and positively, the amount of the sum due to him.　　However conscientiously the plaintiff may have believed that the liquidation and settlement of their affairs would eventuate in a balance in his favor of twenty-nine hundred dollars, the nature of the case forbids us to consider his affidavit as meeting the rigorous intendment of law providing this onerous remedy.　　Such was the view taken by the court in the case of *Levy* v. *Levy,* 11 La. 581.　　It is true, as contended by the plaintiff's counsel, that the circumstances in that case were stronger in favor of the party moving to dissolve, than those now presented; but the principle on which that case rests, appears to us fully applicable to the matter now before us.　　We refer to, and adopt what is there said, as a just exposition of the intent of the Code.

We do not, however, wish to be considered as laying down the rule that, in no case of joint adventure can a partner proceed by attachment.　　Suits may occur in which the business of the adventure may be so limited and simple in its features, as to exhibit a case where the party might be considered as able to swear to a positive and precise balance.　　When such a case presents itself, we shall deem the point open to consideration.　　The mere bonding of the property did not debar the defendant from moving to dissolve the attachment.　　See the case of Myers *v.* Perry, 1 Ann. Rep. 372.

The motion to dissolve on certain enumerated grounds, was made at an early day after the institution of the suit, and before issue joined.　　Two days after the first motion, and before it was adjudged, the defendant asked leave to amend, by adding the ground for dissolution which we have considered.　　The court permitted the amendment.　　We think this was a proper exercise of the discretion of the court.　　The ground was based upon matter apparent on the face of the petition; it was not calculated to delay the trial of the rule. and does not appear to have taken the plaintiff by surprise, as he did not move for a continuance of the hearing.　　Our Code has laid down rules on the subject of amendments of the *pleadings*, but we are not aware that there are any express provisions of law, which, in matters of this nature, restrict the discretion of the judge, where, in his opinion, the amendment, without creating delay, will tend to the furtherance of justice, by restricting within its proper sphere a harsh remedy.

<div style="float:right">BRINEGAR<br>v.<br>GRIFFIN.</div>

The defendant, who made a personal appearance, also contends that the suit itself should be dismissed. It is true that the parties both reside out of this State, that the contract in which the suit originates, was made in Kentucky, and that the suit involves the liquidation of a partnership. Residence is not indispensable to the jurisdiction of our courts over parties present, even temporarily, in our State. Upon the general question, whether we will take cognizance of all suits for the liquidation of partnerships brought by non-residents against their partners, also non-residents, we express no opinion. When a case is presented of the liquidation of a commercial, or other partnership, involving extended and complicated transactions, conducted abroad, and the partnership having a domicil out of our State, it will be time enough to consider that question. In the present case, the partnership business was to be consummated in Louisiana. According to the plaintiffs' showing, it was so consummated. In the investigation of a very important portion of the partnership accounts, the proceeds of the property sold, the examination can be conducted with greater convenience and probably less expense, here than elsewhere; and we are not prepared to say that, as to other subjects of evidence and enquiry, the facilities of another forum would preponderate. The plaintiff is clearly, under our laws, entitled to the forum which he has chosen, and we are of opinion that the court below erred in dismissing the suit.

It is therefore decreed that, so much of the decree of the District Court as dissolves the attachment, be affirmed, and that so much of the said decree as dismisses the suit, be reversed; and that this cause be remanded for further proceedings according to law, the costs of this appeal to be paid by the defendant.