## J. D. DENEGRE *v.* GEORGE MILNE & CO.

The remedy by attachment does not embrace cases of prospective conditional and contingent liability; it must be confined to cases where, in addition to the other requisite circumstances, there is an *existing debt*, although the period of its payment has not arrived. Therefore an attachment will not be maintained against the property of the drawer of a bill of exchange until its maturity, although he may have *suspended payment before the attachment*; for, until maturity, the drawer is not the unconditional debtor of the holder.

The expression " acceptance waived" in a bill of exchange does not strip the instrument of the character of a bill of exchange, or deprive its signer of the character and rights of a drawer.

Article 2049 of the Code, whereby " debts due by the insolvent shall be deemed to be due, although contracted to be paid at a time not yet arrived," does not reach conditional obligations.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J.   *W. O. Denegre*, for plaintiff. *J. W. Duncan*, for defendants and appellants.

SLIDELL, C. J. The plaintiff is holder of a bill of exchange of the following tenor:

Exchange for $5,000.                 CINCINNATI, October 30, 1854.

Twelve days after sight of this first of exchange (second unpaid), pay to the order of *Keys, Maltby & Co.*, in current funds, five thousand dollars, value received, and charge the same (acceptance waived) to account of

GEORGE MILNE & CO.

To BENOIST, SHAW & Co., New Orleans, La.

ENDORSED.

Pay to the order of *J. D. Denegre.*       KEYS, MALTBY & CO.,
                 Per pro. *James D. Denegre,*   J. NOEL.

On the face of the draft is written, "November 8, 1854," which seems to be the date of its exhibition to the drawees for the purpose of fixing its maturity. On the 23d of November, being twelve days, with days of grace added, after sight of the bill, it was protested for non-payment, and notice was mailed to the drawees on the same day by the notary.

On the 15th of November, 1854, nine days before the maturity of the bill the plaintiff obtained a writ of attachment against *George Milne & Co.*, alleging in his affidavit that they were indebted to him in the sum of $5,000 not yet due; that they resided out of the State, had failed and were insolvent; that they had property in the hands of *Benoist, Shaw & Co.*, and were about to remove it out of the State before the debt would become due. On the following day, a vague petition was filed, in which an indebtedness of $5,000 by

defendants to plaintiff, as holder of the bill is alleged, followed by a prayer that the attachment be maintained. On the 24th of November, the garnishees answered that they had in their hands at the service of the attachment, a cash amount of $1,824 21, to the credit of the defendants, and acceptances of various parties transmitted to them, by the defendants, for collection, amounting to several thousand dollars, and also acceptances to the amount of several thousand dollars received from the defendants on the 16th and 18th of November. They state that they have been since garnisheed by other creditors.

The defendants excepted to the suit as premature, and took a rule to set aside the attachment on the ground, that the affidavit was untrue, and also that they were sued as drawers of a bill which had not matured at the date of the attachment, and that there existed at that date no such indebtedness as authorized an attachment.

At the trial it was proved, that *George Milne & Co.*, brokers at Cincinnati, suspended payment there on the 14th of November, 1854, and on the 22d of the same month, made an assignment of their partnership assets to a trustee, selected by themselves, in trust for their partnership creditors, the surplus, if any, to be returned to the grantors. At the date when the witness testified, (January, 1855,) they were reputed insolvent.

The District Judge dismissed the rule, overruled the exceptions, and gave final judgment for the plaintiff, from which the defendants have appealed.

It is a familiar doctrine in our jurisprudence, that the remedy by attachment being harsh and extraordinary, is to be construed strictly.

If this doctrine be sound with regard to the remedy of attachment for a debt due, *a fortiori* does it commend itself to an our approval, where the remedy is invoked for a claim not due—a remedy granted by our Statute of 1826, but which, so far as we are aware, is without precedent or parallel in any State of this Union. In speaking of the similar Statute of 1817, Matthews, Justice, observed : " In ordinary cases of attachment founded on debts due, as the remedy does not conform to the usual course of legal proceedings, which requires defendants to be cited before judgment, courts of justice always insist on strict pursuance of a law which grants such remedy ; and it appears to us, that the necessity of requiring this strictness of pursuit is much more urgent in a case like the present, where a recovery is sought of a debt not due at the time of obtaining the writ. The section of the Act under which it was issued, is certainly severe in derogating from the customary principles of jurisprudence ; and ought therefore to be confined within the narrowest limits which its phraseology will permit." See also *Rusell* v. *Wilson*, 18 La. 370.

Approaching the interpretation of the Statute of 1826 in this spirit, we are of opinion the remedy it confers, must be confined to cases where, in addition to the other requisite circumstances, there is an existing debt, although the period of its payment has not arrived—*debitum in præsenti, solvendum in futuro*—an existing absolute liability to pay at a future time ; and that the Statute does not embrace cases of prospective conditional and contingent liability.

The germ of this interpretation is found in *Taylor* v. *Crane*, 13 La. 64. By our Civil Code, a security may, even before making any payment, bring a suit against the debtor, to be indemnified by him, when the debtor has become a bankrupt or is in a state of insolvency. Art. 3026. An endorser sought this indemnity by a proceeding of attachment, alleging that he was the defendants'

accommodation endorser on a note not yet due and held by a third person, and that the maker was about to remove permanently from the State and take away his property. The attachment was set aside.

After this came the case of *Harrod* v. *Burgess*, 5 Rob. 449. The defendants were endorsers of a note not yet due, the maker of which was insolvent and had left the State, and the holder took out a writ of attachment against the endorsers, alleging that they would be ultimately liable, and his apprehension that the endorsers would dispose of their property and leave the State. The attachment was held unlawful, because the obligation of the defendant was dependent on several contingencies. It was possible the maker might pay. If he did not, the plaintiffs were bound to make a demand of the maker and notify the defendants. The omission of either would be fatal to the plaintiff's rights. The remedy, said the court, is a harsh one, and the plaintiffs must be held to it strictly.

It is clear that in the present case, the defendants were not the unconditional debtors of the plaintiff at the date of the attachment. Their obligation was conditional and contingent. It depended upon future events, which might or or might not happen, the non-payment of the bill by the drawees, protest, and seasonable notice of non-payment to the drawers.

The court below based its ruling upon two considerations: "That in the body of the draft, acceptance is waived, and that the defendants have become insolvent."

We do not consider the expression, "acceptance waived," as stripping the instrument of the character of a bill of exchange, or depriving its signers, *George Milne & Co.*, of the character and rights of drawers of a bill of exchange. These were merely qualified, and to this extent; the insertion of those words, created between the drawers and the payee, and those subsequently taking the bill, an agreement that the drawees should not be required to accept the bill upon its sight. Without these words, it would have been the holders right to insist upon an acceptance upon presentment, protest the bills, if acceptance were refused, and take his immediate recourse against the drawers ; with them, he had only the right to exhibit the bill for sight in order, to fix the date of maturity, which was done, and was bound to wait until the maturity for payment by the drawees, at which time the drawer engaged it should be paid by the drawees. Upon failure of payment, protest and notice, the liability of the drawers, which was previously conditional would, in general, become absolute. No adjudged case, militating with this view of the rights of those parties has been referred to by the District Judge, or cited in argument here by the plaintiff; and we are satisfied that the construction we give would be in accordance with the understanding of men of business, and meets the understanding of the parties themselves when the bill was drawn and negotiated. The validity of the instrument as a bill of exchange; its essential character as a bill of exchange, are not destroyed by such a qualification. It is still a request to the drawee by the drawer, to pay a sum of money to the payee or his order, absolutely and at a time mentioned in the bill.

Then, as to the other reason given by the District Judge, "that the defendants have become insolvent." Upon this, we observe, that if we are to take the expressions literally, it is too clear to require argument, that an event occurring subsequent to the attachment, could not retroact so as to give the attachment validity. An attachment must stand or fall according to the state of

Denegre
v.
Milne.

facts existing at the date of its issuing, and cannot be cured by a subsequent event. *Read* v. *Ware*, 2 An. 498. *Blunchard* ·v. *Grousset*, 1 An. 98. *Black* v. *Zacharie*, 2 Howard, 510. If, however, the District Judge meant to speak of the insolvency as occurring before the attachment, we have to observe that the evidence shows merely a suspension of payment, and at the utmost, authorizes only an inference of actual insolvency at the time of the attachment, not a technical insolvency in the sense of our Code, Art. 2049, whereby "debts due by the insolvent shall be deemed to be due, although contracted to be paid at·a time not yet arrived." See 10 Rob. 533. Besides, the rule of the Code does not reach to record conditional liabilities; and it is also clear that even the bankruptcy of the drawer does not dispense the holder from making presentment for payment to the drawee, protesting and giving notices to the bankrupt or his assigns, if they have chosen. Story on Bills, §305. Chitty, 369.

It will be observed, there is no pretence in this case that the defendants had no funds in the hands of the drawees, or had no right to draw.

It is therefore decreed, that the judgment of the District Court be reversed; that the attachment be dissolved, and the suit dismissed as in case of non-suit. The plaintiff to pay costs in both courts.