"Q. So you might say unavoidable risk attending the work?

"A. Yes, sir.

"Q. It is comparatively a slight danger?

"A. Yes, sir.

"Q. Very seldom happens?

"A. Yes, sir; very seldom happens.

"Q. Suppose if the fire was thoroughly put out there would be no danger of anything like that happening?

"A. No, sir; not any more than the danger of handling the pressure on the line."

We have examined the testimony in the record with a view of ascertaining from it what fact, if any, would cause this case to fall as an exception to the general rule that the servants of an independent contractor who are not entitled to damages for injuries received from the fault or negligence of their own employer, from the party whom their employer had contracted? In our opinion we have found no such fact.

This being the conclusion reached it is useless to examine and discuss what the legal situation would be as between the plaintiff and Jolly, for, conceding that he was guilty of fault and of negligence, that fact would be irrelevant in the present suit.

We discover nothing in the present situation by reason of which fault or negligence on the part of the contractor would throw upon the defendant company legal liability to his servants for such fault or negligence from which they have been injured.

Nothing which required defendant to have taken direct control of and supervision over the contractor as to the plan he would pursue to carry out his contract or as to measures he would take to execute it in safety.

The fact that subsequently to entering into his contract Jolly became a stockholder in and secretary-treasurer of the defendant company, and was such at the time of the accident, did not affect the legal situation, nor did the fact that the money with which the workmen were paid was received weekly by him from the defendant company, it was paid to him as money due to him on his contract and not as money due the workmen for their wages; had Jolly after receiving the money applied it to some other purpose than paying the men, they would have had no recourse upon the company for payment of their wages—they were not its employés.

The evidence shows there was a way in which the work could be executed in safety.

The proximate cause of the accident was the presence in the neighborhood of the leak of a fire partially unextinguished with which the gas escaping from the joints being taken out came into contact, causing an explosion. Without the presence of such a fire at that time there would have been no accident. Defendant had no reason to suppose that such a condition of things would arise or that the contractor would not take all necessary and proper precautions.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the verdict of the jury in each of the two cases, and the judgment of the court in each of the said cases herein appealed from, be and the same are hereby annulled, avoided, and reversed, and the demands of the plaintiff in each of said two cases be, and they are hereby, rejected and their suits dismissed.

---

(46 South. 806.)

No. 16,537.

E. SONDHEIMER CO. v. RICHLAND LUMBER CO.

(Jan. 20, 1908. On Rehearing, June 8, 1908.)

1. PLEADING — MOTIONS—ELECTION BETWEEN CAUSES OF ACTION—EXCEPTIONS.

The fact that both specific performance and damages are demanded may afford ground for a motion to elect, but not for an exception of no cause of action.

2. CONTRACTS—PERFORMANCE OR BREACH—DEMAND FOR PERFORMANCE — INSTITUTION OF SUIT.

The institution of a suit is one of the modes of putting in default.

3. ATTACHMENT — GROUNDS OF — DEBT—CERTAINTY.

The margin between market price and the price fixed in a contract for the delivery of lumber is a sufficiently certain basis for fixing the amount of a debt upon which to predicate an attachment.

4. SAME.

Attachment may be resorted to as a conservatory measure to a suit which the plaintiff "intends to bring." Hence, where plaintiff alleges that defendant is about to dispose of all his property and remove permanently from the state without fulfilling a certain contract, and that by the nonfulfillment of the contract plaintiff will be damaged in an amount stated, and that plaintiff intends to bring suit for the damages as soon as the time for fulfilling the contract has expired and the right of action has accrued; the liability of defendant is sufficiently a "debt" within the intendment of the Code of Practice to support an attachment.

Breaux, C. J., dissenting.

On Rehearing.

5. SPECIFIC PERFORMANCE—GROUNDS OF RELIEF—PLEADING.

A petition, filed within 7 months from the making of a contract, which alleges that defendant agreed to deliver a certain quantity of lumber within 10 months; that it (defendant) has delivered part of the lumber; that it is about to sell all of its property in, and permanently remove its business from, this state; but which does not allege that defendant is in default on its contract, or intends making default, or that the alleged contemplated sale and removal will result in such default, discloses no cause of action for either specific performance or the recovery of damages.

6. ATTACHMENT — GROUNDS OF — DEBT NOT DUE.

To authorize an attachment for a debt not yet due, there must be a debt actually existing, though not exigible,—debitum in præsenti, solvendum in futuro; and the amount claimed must, in its nature, be susceptible of being fixed with certainty by the oath of the party applying for the writ.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 5, Attachment, §§ 30–36.]

Provosty, J., dissenting.

(Syllabus by the Court.)

Appeal from Seventh Judicial District Court, Parish of Richland; William Jefferson Gray, Judge.

Action by the E. Sondheimer Company against the Richland Lumber Company. Judgment for defendant, and plaintiff appeals. Affirmed.

Ellis & McGregor (C. L. Marsillot and A. H. Murray, of counsel), for appellant. E. Tyler Lamkin and Andrew Augustus Gunby, for appellee.

PROVOSTY, J. The lower court sustained an exception of no cause of action, and dismissed plaintiff's suit.

Plaintiffs allege that the defendant, a corporation organized under the laws of Wisconsin, now doing a sawmill business in Richland parish, La., entered into a contract with them to manufacture for and deliver to them, on board cars at Mangham, La., so many feet of lumber, of such a description, at such a price, by such a date— all specified in the petition; and that if said contract is not complied with they will lose the profits on said lumber amounting to so much—giving the exact amount. They allege, further, that defendant has never had a permanent domicile in this state, and is about to sell all the property it owns in this state and remove its said business from this state, without there being a possibility in the ordinary course of judicial proceedings of obtaining or executing a judgment against it prior to its departure. They pray for an attachment and further, as follows:

"That defendant be ordered to comply with its said contract within a time to be fixed by your honor court, and in default of its so doing that there be judgment in favor of plaintiff and against it in the aforesaid sum of losses named with 5 per cent. from judicial demand, recognizing plaintiff's privilege on property that may be seized by virtue of said writ, and that same be sold under said judgment. Pray that in so far as plaintiff's demand may not be yet mature it be allowed to remain on the docket of this honorable court, they reserving the right to amend and ask for final judgment at the proper time."

The contract is annexed to and made part of the petition. It contains the following clause:

"Time being of the essence of this contract, and second party having itself entered into contracts obligating itself to deliver same, based upon this agreement, first party covenants that it will begin the manufacture of said lumber in the month of December, 1905, and shall complete said contract within ten months from this date."

This suit was filed in June, 1906; that is to say, before the expiration of the delay for completing the contract.

The president of the defendant corporation is alleged to be a resident of the parish in which the suit has been brought, and service of citation is asked to be made upon him; and the citation was made in accordance with the prayer.

We take up and dispose of, seriatim, the reasons assigned by defendant, as we understand them, why the petition is said not to show a cause of action.

First. That plaintiffs are suing for both specific performance and damages, and that they cannot be entitled to both.

If plaintiffs were doing what defendant here says they are, it would not furnish ground for an exception of no cause of action, but only for a motion to elect. It would be a case, not of insufficiency of allegation, but of excess of prayer.

Second. That defendant was not put in default.

Defendant misconceives, here, the nature of the suit. The suit is not, as yet, a suit to compel defendant to perform the contract. As such it would be premature. The time for fulfilling the contract has not yet expired. The suit, as yet, aims at nothing more than to prevent defendant from disposing of its property, and leaving the state before judgment could be obtained against it in the ordinary course of judicial proceedings. Defendant has yet time to perform the contract,

and the present suit is a demand that it do so, and it is, as such, a putting in default of the most peremptory character. As to putting in default by institution of suit, see article 1911, Rev. Civ. Code, and R. R. Co. v. Ganalh & Co., 18 La. 510–513. As to attachment by way of conservatory measure to a suit which the plaintiff "intends to institute against" the defendant, see Code Prac. art. 208; Bank v. Brewing Association, 49 La. Ann. 944, 22 South. 48; Neilson v. Pool, 17 La. 209; Catlett v. Heffner, 23 La. Ann. 577. In Bank v. Brewing Association, this court said that the proper practice was to ask for the attachment without asking for absolute judgment, reserving the right to ask for absolute judgment by a supplemental petition to be filed when the obligation should mature.

Third. That the damages are too speculative, or uncertain, to support an attachment; in that the petition "does not allege how the losses or profits arise, or on what possible basis they are estimated—whether on future, or past, or present, prices, of lumber"; and also in that "defendant's sawmill might burn pending the suit, and defendant be liberated from the contract"; and finally in that "the price of lumber might go down."

Touching the degree of certainty which a demand must possess in order to serve as a basis for attachment, see Morgan's Louisiana & Texas R. R. v. Stewart, 119 La. 392, 44 South. 138. In the case of Williams & Co. v. La. Lumber Co., 105 La. 99, 29 South. 491, the claim was for the margin of profits on lumber, and the attachment was sustained, although plaintiff was found to have stated the amount of the damages too high. One of the clauses of the contract sued on is to the effect that the lumber which defendant is to deliver to plaintiff has already been sold by plaintiff. If the profits of which plaintiff alleges the loss are the margin of profits be-

tween the two contracts, they are as exactly fixed and determinate as any amount could be. But if they are the margin between the contract price and the market price at the time of filing the petition, we do not see why they should not be sufficiently determinate to support an attachment. The danger of the market price going down is fully offset by the chance of its going up. Of course, the claim of damages would be too speculative to support an attachment if based on market price in the future. The court will not, however, on this exception of no cause of action, assume that the claim is so predicated; but, rather, that it is predicated on the margin between the two contracts or between contract price and market price at filing of suit.

But the allegation is—and for the purposes of the exception of no cause of action it must be taken for true—that defendant is not going to fulfill the contract. If so, the damages will become due at the expiration of the time for fulfilling the contract, and the case simply resolves itself into that of an existing, but immature, obligation such as by express provisions of the Code (article 210 et seq.) may be protected by attachment. The present proceeding has been resorted to by plaintiff simply to prevent defendant from defeating the suit in damages which plaintiff "intends to bring" hereafter (Code Prac. arts. 208, 239), and which plaintiff will as a matter of certainty have the right to bring if the allegations of the petition are taken for true, as they must be on the present exception.

The present case is distinguishable from those of Claflin v. Feibelman, 44 La. Ann. 520, 10 South. 862, Black v. Zacharie, 3 How. (U. S.) 485, 11 L. Ed. 690, Denegre v. Milne, 10 La. Ann. 324, Barriere v. Feste, 9 La. Ann. 535, Blanchard v. Grousset, 1 La. Ann. 96, and Hunt v. Norris, 4 Mart. (O. S.) 517, in that, in those cases, the liability sought to be made the basis of the attachment was not merely immature but as yet inexistent; so that at the time of the attachment there was no actual debt, mature or immature; whereas, in the present case, there is an actual existing obligation, and under the allegations of the petition, taken for true, that obligation represents a certain fixed value, and there is therefore a debt of some kind; and article 242, Code Prac., authorizes attachment to issue "in order to secure the payment of a debt, whatever may be its nature." This language is, we think, broad enough to include a fixed contractual obligation, which, although not as yet for the payment of money, will, under the allegations, taken for true, be for the payment of money at its maturity. See Morgan's La. R. R. v. Stewart, supra.

Fourth. That although defendant is sued as a resident, the petition contains no grounds for attachment against a resident.

The defendant is alleged to be about to sell all its property in the state and leave the state, without there being a possibility, in the ordinary course of judicial proceedings, of obtaining or executing judgment against it previous to its departure. This suffices for sustaining an attachment. Code Prac. art. 240.

The motion to dissolve is not involved in this appeal—it not having yet been tried in the lower court—plaintiffs not having yet offered their evidence upon it. There is at present before the court only the exception of no cause of action; for the trial of which the allegation that defendant is a nonresident corporation must be taken for true.

Judgment set aside, and the exception of no cause of action overruled, and case remanded to be proceeded with according to law.

BREAUX, C. J., dissents. LAND, J., takes no part.

On Rehearing.

MONROE, J. This suit was instituted on June 7, 1906.

The allegations and prayer of the petition which are material to the question at issue are substantially as follows:

Plaintiff alleges that, in December, 1905, it entered into a contract with defendant, a corporation organized under the law of Wisconsin, whereby (and as subsequently changed) defendant agreed to sell it (plaintiff), say, 5,700,000 feet of lumber, of different kinds, at certain prices; that defendant was to commence sawing the lumber in December, 1905, and complete it in 10 months from that date; that it has delivered, say, 946,000 feet.

"Represents that said lumber company is about to sell all the property it owns in the state of Louisiana, and permanently remove its said business therefrom. Represents that said lumber company is a Wisconsin corporation and has never had its permanent domicile in said state. Represents that there will not be a possibility in the ordinary course of judicial proceedings to obtain or execute judgment against said lumber company prior to its departure. Represents that, if said contract is not complied with, said Sondheimer & Co. will lose, as profits on said lumber: On said red gum, $21, $10.50, $6, and $6 per 1,000, on the grades mentioned, respectively; on plain oak, $7 per 1,000; on quarter sawed, $8 per 1,000; on log run sap gum, $4 per 1,000; and on common sap gum $3 per 1,000; making total loss $32,143."

Wherefore, plaintiff prays that defendant be cited; that a writ, and an alias writ, of attachment issue to the sheriffs of Richland and Franklin parishes, respectively, and that all the property of defendant in those parishes be seized;

"That said lumber company be ordered to comply with the terms of its said contract with plaintiffs within a time to be fixed by your honorable court, and, in default of its doing so, that there be judgment in favor of plaintiffs and against it in the aforesaid sum of losses named, with 5% from judicial demand, recognizing plaintiffs' privilege on property that may be seized, * * * and that same may be sold under said judgment. Pray that, in so far as plaintiffs' demand may not be yet mature, it may be allowed to remain on the docket of this honorable court, they reserving the right to amend and ask for final judgment at the proper time."

The affidavit, signed by the secretary of the plaintiff company, reads:

"That all the facts and allegations contained in the foregoing petition are true and correct; that he has full power and authority to make this affidavit and sign bond for plaintiff corporation; and that the president of said corporation is now absent from the state."

It will be seen, by comparing the allegations of the petition with the date of its filing, that, when the suit was brought, defendant had still three months of the time allowed within which to deliver the lumber called for by the contract; that plaintiff does not allege that there had been any default when the suit was instituted, or that any default was intended by, or would, necessarily, result from the alleged contemplated sale by defendant of its property, and that the first prayer of the petition is "that said lumber company be ordered to comply with the contract, and in default of its so doing, and only in that event, that plaintiff have judgment in the aforesaid sum of losses named," etc.

If, therefore, the theory upon which the suit was brought and the attachment issued be sound, the same course might have been pursued within 10 minutes after the signing of the contract. In other words, plaintiff might at once have brought suit and made a seizure upon the identical allegations that are contained in the petition now under consideration, save as to the partial execution of the contract, and, for the omission of the allegations on the subject, the case would have been all the stronger.

Our reconsideration of the matter has led to the conclusion that the law no more authorizes such a course in the one case than in the other. The petition, regarded as a demand for specific performance of the contract, discloses upon its face, not that the demand is premature, but that the conditions

which might authorize it did not exist when the petition was filed, and, for aught that is alleged, might never exist, and hence, quoad such demand, fails to disclose a cause of action, and disclosing no cause of action as to the judgment prayed for it discloses no cause of action as to the attachment intended to secure the payment of such judgment.

Beyond that, we are of opinion that the petition discloses no right to the writ of attachment: First, because the right to invoke that remedy, to secure the payment of a debt not yet due, is "confined to cases where, in addition to other requisites, there is an existing debt, although not exigible—debitum in præsenti solvendum in futuro—an existing, absolute, liability to pay, at a future time, and does not embrace cases of prospective and conditional liability." Cross on Pleading, p. 281; Taylor v. Drane, 13 La. 64; Harrod v. Burgess, 5 Rob. 449; Blanchard et al. v. Grousset, 1 La. Ann. 96; Shannon v. Langhorn, 9 La. Ann. 526; Barriere & Bro. v. Feste, 9 La. Ann. 536; Denegre v. Milne, 10 La. Ann. 324; Nat. Bank v. Moss & Co. et al., 41 La. Ann. 227, 6 South. 25; Claflin & Co. v. Feibelman & Co., 44 La. Ann. 522, 10 South. 862; Bank v. Brewing Ass'n et al., 49 La. Ann. 934, 22 South. 48; Code Prac. art. 242. Second, because an attachment will not lie where the debt is unliquidated, and, from the nature of the claim asserted, it is evident that any amount that may be fixed upon must be conjectural, and hence ought not to serve as the basis of a positive oath. Cross on Pleading, p. 279; Levy v. Levy et al., 11 La. 581; Brinegar v. Griffin, 2 La. Ann. 154; Barrow v. McDonald, 12 La. Ann. 110.

At the time this suit was instituted, and the attachment issued, there was no existing obligation resting upon defendant with respect to the delivery of any lumber to plaintiff. To the contrary, whilst its contract with plaintiff allowed the whole of 10 months, from December 7, 1905, within which to deliver the whole, or any part, of the lumber called for, it had delivered, according to the allegations of the petition, 946,000 feet within the first 7 months, and its liability for damages was prospective, and conditional, upon its nondelivery of the balance, within the remaining 3 months.

As to the damages, they, also, were prospective, and without the gift of prevision it was impossible for plaintiff to state the amount, which depended entirely upon what might be the price of lumber, such as that called for by the contract, at the place where that lumber was to be delivered, or, upon the price at which plaintiff might be able to fill its own contracts, elsewhere, on September 7, 1906, a date then three months in the future. If the market price should be higher at that date than the contract price, plaintiff would sustain a loss, and if it should be lower, plaintiff would be the gainer by defendant's failure to make delivery, but when the attachment was issued no one knew, and no one could know, whether the price would be higher or lower, and it is quite certain that at that time plaintiff had sustained no loss for which defendant was liable.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be now affirmed, at the cost of the plaintiff.

PROVOSTY, J., dissents.