SOMMERYILLE, J.
Edwin H. Bennett, now deceased, entered into a contract of sale, December 9, 1911, with defendants, Joel F. Johnson & Son, whereby defendants agreed to sell and convey to said Bennett, or to whomsoever he might nominate, certain designated tracts of lands in the parishes of Madison and Tensas, in this state, aggregating about 78,000 acres, at the price of $17.75 for each acre.
Plaintiff alleges that the executrix of the last will and testament of Edwin H. Bennett, April 4, 1912, transferred to it all the right and interest of the succession of the deceased, Bennett, in and to the contract just referred to; that the defendants, March 23, 1912, executed said contract in part by making a deed to one Douglas Alexander, who had been designated by said Bennett to accept title, to some 46,001.39 acres; that defendants, June 29, 1912, again executed said contract in part by making another deed to Douglas Alexander, who had been designated by said Bennett to accept title to 7,337.76 acres;' that later defendants again executed this contract in part by making another deed, conveying 445.14 acres, making a total of 53,784.29 acres transferred under the contract with Edwin H. Bennett, and here sued upon; that the purchase price of the several tracts of land thus conveyed was paid by plaintiff to defendants, with the express understanding and agreement that such partial performances of the contract should not be construed as a waiver by the plaintiff to its right to the full and complete performance thereof; that defendants have failed and refused to convey to plaintiff the balance of the 78,000 acres covered by the contract; that there was no time limit in the said contract for the transfer of the land therein mentioned; that defendants claimed and represented to said Bennett at the date of the contract that they were the owners of all of said tracts of land, and that they were able to convey and give good title thereto; that defendants did not have title to said tracts of land, or have contracts for their purchase; that defendants were regularly placed in default; that defendants made many promises to acquire title to, and to transfer the remaining tracts of land, but that they have not done so; that in the midst of said 78,000 acres of land which defendants obligated themselves to convey under the contract was a tract of 16,000 acres, which was the property of the Deltic Investment Company, Limited, a foreign corporation; that December 4, 1912, plaintiff bought said 16,000 acres of land from the Deltic *593 Company, and covered by the contract, at the price of $20 per acre, that being the market price and the lowest price at which said tract could be bought; that there remained to be acquired some 8,217.74 acres under the original contract which defendants had not delivered, and which they cannot deliver, because they are not the owners thereof, and because they neglect and refuse to acquire title thereto; that these lands are worth $20 per acre at the date of the filing of this suit, March 4, 1913; that it has suffered loss, and has been damaged, by the failure and refusal of defendants to execute their contract in the full sum of $54,481.91, with interest; that defendants are nonresidents, with property in this state; that a writ of attachment should issue and defendant’s property be seized thereunder; and it asks for judgment accordingly.
A writ of attachment was issued as prayed for, and some lands belonging to the defendants were seized.
Defendants moved to dissolve the writ of attachment in the following language:
“Now comes Jeff B. Snyder, curator ad hoc, and shows to the court that the cause of action set forth is a claim for unliquidated damages for the alleged violation of a contract, and that under the laws of Louisiana no writ of attachment can be based upon, or issue under, such a claim. It is ordered by the court that plaintiff do show cause on the 23d day of April, 1913, at 10 o’clock a. m., why the attachment in this case should not be dissolved, with costs.”
An exception was also filed to the same effect, but it has not been disposed of.
There was judgment as follows:
“Finding it impossible to see how the damages alleged upon could be other than conjectural and unliquidated, the motion to dismiss is sustained.”
Plaintiff has appealed.
[1,3] Plaintiff’s suit is one sounding in damages ex contractu.
Assuming the allegations contained in the plaintiff’s petition to be true, in considering the motion to dissolve the attachment, the damages claimed by plaintiff from defendants, while unliquidated, are not speculative, conjectural, or indeterminate.
Plaintiff alleges that defendants agreed to sell it 16,000 certain acres of land in the parishes of Tensas and Madison, belonging to the Deltic Company, at $17.75 per acre, which was not delivered, and which it, plaintiff, bought at $20 per acre from said Deltic Company, after having put defendants in default; and it claims as damages the sum of $2.25 per acre, the difference between the price fixed upon between plaintiff and defendants, and the price paid by it, plaintiff, for said land. This is a specific demand for a certain sum as damages^ and it admits of positive proof, if true. And, under the law, article 242, C. P., the property of defendants, the debtors, may be attached by plaintiff, the creditor, in order to secure the payment of the debt, whether the amount be liquidated or not, upon plaintiff’s swearing to the existence of the debt demanded by it. Article 243.
The act of sale from defendants to plaintiff, attached to the petition, after describing the acreage of each tract of land sold, contains the provision that plaintiff—
“does hereby agree to pay therefor according to the actual acreage of each tract of land as shown by the survey and plat of the government of the United States.”
And defendants argue that until such surveys and plats have been made, the acreage is uncertain, and therefore the amount which may be due is uncertain. But plaintiff’s allegation is that it bought 16,000 certain acres at $20 per acre, which makes the demand certain.
[2] Defendants further argue that the contract with the Deltic Company, attached to plaintiff’s petition, shows that said company sold to plaintiff some 19,102.75 acres, and not 16,000 acres, for a lump price of $367,055, which a calculation will show was at the rate of $19.24 per acre, and not $20, *595 as alleged by plaintiff. But, this exhibit does not contradict the sworn allegation of plaintiff that it paid $20 an acre for the 16,000 acres, which were specified in the contract between it and defendants. It may have been that the Deltic Company insisted upon the sale of the 19,102.75 acres while selling the 16,000 acres to plaintiff, and that the price of the 16,000 acres was $20 per acre, and the price of the balance was for less than that figure. This is a matter of proof on the trial of the cause.
Again, the variance between the petition and the act of sale annexed thereto (with reference to the sale of the 16,000 acres) cannot invalidate the proceedings, inasmuch as said act is not the foundation of this suit, but may be used, only as evidence on the trial. 31 Cyc. 564. And particularly is this so where there is not positive conflict between the two. The rulings of this court to the contrary have been in suits on promissory notes, where the description of the notes in the petition did not correspond with the notes themselves in all particulars, and to suits which are founded on instruments annexed to the petition, where there were irreconcilable differences between the pleadings and exhibits made parts thereof. In the instant case there can be no surprise on defendants’ part; they are put in full possession of all the facts, and they have full opportunity to plead.
Defendants refer to several decisions of this court involving the settlement of partnership affairs, where we hold the nature of such cases forbids us to consider the affidavit attached to the petition praying for an attachment. We hold in those cases that the creditor must be able to state on oath, expressly and positively, the amount of the sum due him, and that he cannot do this in a suit for an accounting and a settlement of accounts between partners. But in the present case the plaintiff does state on oath expressly and positively the amount of the sum alleged to be due it. Those cases have no application here.
The next item of damages claimed by plaintiff is the difference between the contract price, $17.75, and the market price, $20, on 8,217.74 acres of other land, mentioned in the contract, and which defendants now refuse to convey to plaintiff.
The margin of difference in this instance, like the preceding one, is fixed, • certain, and readily ascertainable; and a writ of attachment may be predicated upon that demand for damages.
In the case of Tulane Educational Fund v. Baccich & De Montluzin, 129 La. 469, 56 South. 371, where defendants had sold and agreed to convey to plaintiff lots which they did not own, and which were subsequently acquired by the plaintiff from the owner, at a higher price than that formerly agreed upon between plaintiff and defendants, we hold that the difference between the price paid for the lots and the price for which the parties making the contract had agreed to convey the land was the true measure of damages. Such damages may reasonably have been supposed to have entered into the contemplation of the parties at the time of the making of the contract; we there hold defendants to be responsible in damages.
Again, in the case of Peck v. Southwestern Lumber & Exporting Company, 131 La. 177, 59 South. 113, involving a lumber contract, where the purchaser refused to take the quantity of lumber contracted for, that the seller had the right to manufacture said lumber and to sell it, when manufactured, to the best advantage, and to hold the original purchaser for the damages suffered by its refusal to carry out its contract. We there say:
“True, the amount of such debt is not yet fixed or certain; but in law ‘id eertum est quod certum reddi potest.’ ”
*597 And—
“that (article 1930) the party who violates his contract ‘is liable, as one of the incidents of his obligation, to the payment of the damages which the other party has sustained by his default.’ ”
Again, in the case of Williams v. Louisiana Lumber Co., 105 La. 99, 29 South. 491, also involving a lumber contract, we say:
“If one, in good faith, sues for the violation of a contract, and claims a larger amount than is afterwards decreed by the court to be due, the accompanying attachment should be held good for the amount so decreed as due.”
The margin between the market price and the price fixed in a contract for the delivery of lumber is a sufficiently certain basis for fixing the amount of a debt upon which to predicate an attachment. Sondheimer Co. v. Richland Lumber Co., 121 La. 786, 46 South. 806.
See, also, Cross v. Richardson, 2 Mart. (N. S.) 323, where we construe the Practice Act of 1S17, which act has, in a large degree, been embraced in the Code of Practice; Morgan’s La. & Texas R. R. Co. v. Stewart, 119 La. 392, 44 South. 138; Belden v. Read & Hunt, 27 La. Ann. 103; Flower v. Griffith, 12 La. 345; Irish v. Wright, 12 Rob. 563.
The trial judge rests his ruling for dissolving the attachment sued out by plaintiff on the decision of this court in Sondheimer Co. v. Richland Lumber Co., 121 La. 786, 46 South. 806, which was a demand for damages on a contract which had not expired by limitation, and where the plaintiff had not alleged that defendant was in default, or intended making default, or that the alleged contemplated sale and removal charged would result in a default. We there hold that the petition discloses no cause of action, and that to authorize an attachment for a debt not yet due there must be a debt actually existing, though nonexigible. It has no application to this case.
The defendants’ argument to the effect that the damages demanded by plaintiff are conjectural, and therefore cannot form the basis for a writ of attachment, because plaintiff does not allege the value of the land at the date of the default, but only at the date of suit, cannot be sustained in view of the allegations in the petition. The date of the contract was December 9, 1911, and there was no time limit for the fulfillment or execution of said contract. The first partial transfer of property under the contract was made on March 23, 1912, a second transfer was made June 29, 1912, and a third transfer at some time thereafter, the sale by the Deltic Company of the 16,000 acres was made December 4, 1912, and this suit was filed March 4, 1913, all within one year after the first attempt on the part of the defendants to partially execute the contract. This time was very reasonable, and the value of the 16,000 acres of the real estate involved is shown in the petition to have been the same on the date of the default and on the date of the filing of the suit. The other 8,217.74 acres, in the same locality, and covered by the contract, were worth about the same price as the 16,000 acres. The allegation that they were worth the same price on March 4, 1913, as other similar lands were some three months previous is sufficient.
Tl^e judgment appealed from is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that the motion to dissolve the writ of attachment issued in this case is dismissed, at defendants’ cost; costs of appeal are to be paid by defendants.
PROVOSTT, J., being absent on account of illness, takes no part.