## MILLAUDON vs. FOUCHER.

APPEAL FROM THE PARISH COURT, FOR THE PARISH AND CITY OF
NEW-ORLEANS.

Where the notes or debt sued on *are not due* at the inception of suit, an attachment will not lie, on an affidavit in which the plaintiff only swears to the existence of the debt, *and that the defendant has left the state, never again to return.*

The act of 1826, amendatory of the articles 242–3–4 of the *Code of Practice*, requires in cases where the *debt is not due*, the further averment under oath, that the defendant is about to *remove his property* out of the state before said debts become due, in order to obtain a writ of attachment against it.

The debtor does not lose the benefit of the *term* stipulated for the payment of his debts, in regard to those not due, by simply leaving the state, when he leaves his property behind.

The provisions of the *Louisiana Code, article* 2049, require not merely an actual, but declared insolvency or inablity to pay debts, by either a voluntary or forced surrender of his property for the common benefit of creditors, before the debtor loses the benefit of his term and his debts *not due,* taken and "deemed to be due."

This suit commenced by attachment. The plaintiff filed his affidavit with the clerk, on the 9th of June, 1834, in which he swears, "that Antoine Foucher, junior, is fully indebted to him in the sum of thirty-three thousand six hundred dollars, and that said Foucher, has left the state

of Louisiana, never again to return ;" upon which a writ of attachment issued against all the property of the defendant. On the next day, the plaintiff filed his petition, alleging that he was the lawful holder of seven promissory notes, drawn by Antoine Foucher, junior, payable at future days, amounting in all to the sum of thirty-three thousand six hundred dollars ; that said Foucher, junior, has become insolvent and absconded from the state, with the intention never to return, having committed various forgeries for large sums of money, and great rewards offered for his apprehension ; that by reason of said insolvency and absconding, all his debts became due and exigible, in pursuance of the provisions of law : wherefore he prays that his attachment be maintained and that he have judgment, &c.

H. R. Denis, Esq., counsel for the defendant, filed grounds and prayed that the attachment be set aside :

1. Because there is an order to stay proceedings against the person and property of the defendant.

2. The court has no jurisdiction of the case, the defendant having a permanent residence and domicil in the parish of Jefferson.

3. Because he is not an absentee in the eyes of the law, having left an attorney duly qualified to represent him in and out of the court.

On hearing the rule to show cause why the attachment should not be set aside on the grounds filed, and on producing evidence that the defendant had absconded, in manner as alleged, the parish judge was of opinion the grounds were insufficient, and discharged the rule.

On the 14th of February, 1835, the counsel for the defendant filed an exception and answer, in the following terms :

The answer of Antoine Foucher, junior, residing in the parish of Jefferson, by Emile Faurie, his attorney in fact, to the petition of Laurent Millaudon, &c. He denies that the court has jurisdiction of the case, because the defendant resides permanently in the parish of Jefferson ; and, therefore,

EASTERN DIST.   the parish court has no jurisdiction of cases arising out of
  June, 1835.   the parish, but that it belongs to the court of the First
MILLAUDON      Judicial District, and prays to be dismissed.   He then pleads
    vs.        the general issue to the merits.
FOUCHER.
                   The testimony showed that Foucher, junior, absconded
               about the 2d of May, 1834, before the institution of this suit,
               to avoid his creditors and the prosecution for forgery.

                   The parish judge decided, that as two of the notes sued on,
               amounting to nine thousand eight hundred dollars, were due
               and payable at the time the answer was filed, that the
               plaintiff had a right to recover that sum, reserving to him the
               right for the balance of the notes when they became due.

                   Judgment was entered accordingly.   The defendant, by
               his attorney in fact, appealed.

                   *J. Slidell,* for the plaintiff.

                   1. A change of domicil is produced by the fact of
               residing in another parish, combined with the intention of
               making the principal establishment there.   In the absence of
               a written declaration, the proof of this intention depends upon
               circumstances.   *Code, articles 43 and 45.*

                   2. Domicil is the place where a person lives or has his
               home, fixedly, permanently, and to which, whenever he is
               absent, he has the intention of returning.   *Story's Conflict of
               Laws, Nos.* 41, 42, 43.   Two things must concur : residence,
               and intention to make it the home of the party.   *No.* 44.
               Whenever a person actually removes to another place, with
               the intention of remaining there for an indefinite period of
               time, it becomes his place of present domicil, notwithstanding
               he may entertain a floating intention to return at some future
               period.   *Ibid., No.* 46.

                   3. Foucher ceased to have his domicil in the parish of
               Jefferson on the day that he absconded.   The fact of his
               leaving his domicil, coupled with the intention not to return,
               operated *ipso facto* a change of domicil.   *Merlin's Rep., verbo
               domicile,* § 11.   *Sirey, Recueil général des Lois et Arrêts, tome*
               13, *part* 2, 353.

4. Having no fixed domicil, he may be sued wherever his person or property may be found. *Ripley* vs. *Dromgoole,* 8 *Martin,* 709.

*Denis,* contra.

*Bullard, J.,* delivered the opinion of the court.

The view we have taken of the merits of the case, renders it unnecessary to examine the questions argued at the bar, touching the jurisdiction of the court under the plea of domicil.

None of the notes sued on were due according to their tenor at the inception of this suit, and the plaintiff in his affidavit swears only to the existence of the debt, and that the defendant has left the state never again to return. The act of 1826, amendatory of the Code of Practice, requires in cases where the debt is not yet due, the further averment under oath, that the defendant is about to remove his property out of the state, before said debt shall become due. *Act of* 1826, *section* 7. *Code of Practice,* 243, 244.

This seems to us a fatal objection, unless the debt by operation of law and the act of the defendant had become due, at the time the attachment was levied. In the petition filed the day after the writ of attachment issued, the plaintiff alleges that the defendant had become insolvent and had absconded, and that by reason of such insolvency and absconding, all his debts became due and exigible. This leads to the inquiry, under what circumstances and for what causes, does a debtor lose the benefit of the term stipulated for the payment of his debt?

Article 2049 of the Louisiana Code declares, that "wherever there is a cession of property either voluntary or forced, all debts due by the insolvent shall be deemed to be due, although contracted to be paid at a time not yet arrived ; but, in such case, a discount must be made of the interest at the highest conventional rate if none has been agreed on by the contract."

74

*Marginal note:* Where the notes or debt sued on are not due at the inception of suit, an attachment will not lie, on an affidavit in which the plaintiff only swears to the existence of the debt, and that the defendant has left the state, never again to return. The act of 1826, amendatory of the articles 242-3-4 of the Code of Practice, requires in cases where the debt is not due, the further averment under oath, that the defendant is about to remove his property out of the state, before said debts become due, in order to obtain a writ of attachment against it. The debtor does not lose the benefit of the term stipulated for the payment of his debts, in regard to those not due, by simply leaving the state, when he leaves his property behind.

The provisions of the Louisiana Code, article 2049, require not merely an actual, but declared insolvency or inability to pay debts, by either a voluntary or forced surrender of his property, for the common benefit of creditors, before the debtor loses the benefit of his term, and his debts *not due,* taken and "deemed to be due."

This article of the code requires not merely an actual insolvency or inability to pay debts, but a surrender of property either voluntary or forced, for the common benefit of creditors. The general rule is, that what is due by contract at a particular time, cannot be demanded before the expiration of the intermediate time; and the article above recited creates exceptions, to wit: in cases where an insolvent debtor has made a surrender either voluntary or forced. It is not enough, in our opinion, that the debtor be in insolvent circumstances, and although in relation to certain classes of persons, their absconding may authorise a forced surrender; yet, until such proceedings be had, there is no forced surrender within the meaning of the code.

Attachment laws must be strictly construed, and no essential formality can be dispensed with. The plaintiff places himself in this case in a dilemma. If his debt was not due, he did not pursue the formalities required by law to entitle him to an attachment. If it was due by operation of law, then the law requires a *concurso* among all the creditors and an administration of the property for their common benefit, and does not authorise a creditor whose debt is not in fact due, to gain an advantage over other creditors whose debts are actually due, by seizing on sufficient property under his attachment to pay the whole of his demand, without submitting to the defalcation contemplated by the article of the code above mentioned. In cases of surrender the creditor cannot proceed separately.

It is true the old Code contained a much broader rule on this subject and provided, that "the debtor can no longer claim the benefit of the term after he has failed, or after he has by his own act diminished the securities given by the contract to his debtor." *Old Civil Code, page* 276, *article* 88. This article appears to have been omitted in the amended code, and the one first above recited substituted for it. The provision in the old Code is copied literally from *article* 1188 *of the Code Napoleon.* Under these dispositions it has been ruled by the Court of Cassation, that the sale by the debtor

of a part of the premises mortgaged for the security of the debt by the contract, operated a forfeiture of the term and the whole debt becomes due and demandable, although the creditor may have received the whole price of the part sold in the proceedings instituted by the purchaser to purge the mortgages.  10 *Sirey*, 139.

The act of absconding, under that provision, may perhaps have operated a forfeiture of the stipulated term by diminishing the security of the creditor.   But it appears to us, that the latter clause of the article of the old Code referred to, has been repealed by the Louisiana Code.   The two provisions cannot exist together, and courts of justice are not authorised  to create  new exceptions not recognised by law.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be annulled and reversed, the attachment dissolved, and that there be judgment against the plaintiff as in case of a non-suit, with costs in both courts.