The opinion of the court was delivered by
Miller, J.
This appeal is by defendants sued and condemned to pay on the promissory note of the New Orleans Brewing Association,, on the back of which the appellants placed their names before the note was delivered by the association to the plaintiff.
The note dated 4th of August, 1895, payable ninety days after date, was given by the association for a loan of money, and it was understood that the appellants’ names were to be placed on the note to-secure the loan, the agreement being fulfilled by the delivery to the plaintiff of the note thus secured. This suit was brought before the-maturity of the note, the petition alleging the loan to the Brewing Association, the giving by the association of the note, that the-appellants were guarantors and bound in solido for its payment, and *936 it is averred that the note had matured by the insolvency of the association. Attachments were obtained against three of the appellants on plaintiff furnishing bond and the affidavit the defendants had mortgaged, or were about to mortgage, their property with fraudulent intent, and judgment was demanded against the association and the appellants in solido for the amount of the note, with privilege on the property of the three defendants attached under the writs.
The association, placed in the hands of liquidators after the suit was brought, excepted on the ground of prematurity. The three defend-ants against whom the writs were issued moved to dissolve, on the .grounds of prematurity; that the petition disclosed no cause of action, and that the affidavits were untrue. The defendants excepted to the suit for prematurity, that of one of the defendants being filed after his answer, but his motion to dissolve the attachment assigned prematurity as one of the grounds; all filed the exception, claiming that the defendants being sureties were entitled to the benefit of •division, and with these exceptions some of the defendants repeated the exception of no cause of action made on the motion to dissolve the writs. The exception overruled, the defendants, reserving the benefit of the exceptions, answered, pleading the general issue, and again insisting on the division allowed sureties and claimed in the exceptions. There was judgment against the defendants in accordance with the prayer of the petition and all the defendants appeal, except the association.
It is contended by plaintiff that the exceptions were waived by the answers of defendants and their insistence on the benefit of division. But the surety sued before the time of payment stipulated in his contract, may well plead prematurity, and that defence failing, claim the division of the debt accorded sureties. Civil Code, Arts. 3045, 3049. The answers filed after the exceptions were overruled left the defendants the full benefit of their exceptions, if sustained on appeal, and for greater caution the defendants, in answering, repeated and reserved the advantage of the preliminary defences. We think there was no waiver of the exceptions.
Again, it is insisted by the plaintiff that from One of the defendants there was no exception of prematurity until after his answer. He is one of the three against whom the attachments issued. One of his grounds to dissolve the writ was prematurity. In this suit, the *937 right to bring it being placed solely on the ground of the insolvency of the maker of the note, in our appreciation the general issue put at issue the alleged insolvency relied on as authorizing the suit against sureties before the default of their principal. ■
There has been an elaborate discussion in this court in reference to the character of the obligation arising from defendants not payees, placing then' names on the note sued upon before its delivery to the plaintiff. This 'question of the original liability and the modification produced by the plea of division ought to be deemed fully answered by our jurisprudence. Civil Code, Arts. 3045, 3049. Smith vs. Gorton, 10 La. 376; McGuire vs. Bosworth, 1 An. 248; McCausland vs. Lyons, 4 An. 273; 4 Boilleux, p. 659. If the appellants could be viewed as endorsers in the commercial sense, the suit would fail because the default of the maker at maturity and notice of that default is essential to hold the endorser. It is, however, as sureties the petition charges that the appellants are liable, and the question is whether the surety can be sued and his property attached before the period for payment stipulated by his contract, and, of course, without any default of the principal debtor to pay at the appointed time. This is the dominating question in the case, and in its solution whether defendants are sureties, endorsers, whether bound jointly or in solido, and all other questions introduced into this discussion can, in our opinion, exert no influence.
On the part of the defendants it has been urged that no attachment, whether on the ground of fraudulent assignment, actual or contemplated, or on any other ground specified by the Oode of Practice, can issue against a surety before, under his contract, he can be called on to pay. On the same line of argument, the right to sue the surety before the time appointed to fulfil his engagement is denied. His engagement is to pay, if the principal defaults, at the maturity of the obligation. C. C., Arts. 3035, 3045. Hence, the defendants have invoked the line of authority that under our law, whatever the cause to attach, no attachment can issue unless the debt is absolute, and a conditional liability will not sustain the writ. In the language of the authorities defining the character of the debt there must be debitum inprsssenti solvendum in futuro — that is, an existing debt, although the term of payment has not arrived. Hence, our courts have uniformly held there could be no attachments against endorsers or drawers of bills of exchange, whether viewed as accommodation drawers or *938 endorsers, or sureties, or as drawers or endorsers in the commercial sense, until their liability had become fixed by the default of the maker of the note or the acceptor of the bill, the principal debtor. Other types of conditional liabilities occur in our reports in which attachments, as well as the right to issue, have been denied. Taylor vs. Drane, 13 La. 64; Blanchard vs. Groussat, 1 An. 96; Harrod vs. Burgess, 5 Rob. 449; Denègre vs. Milne, 10 An. 325. “ If the debtor does not pay ” is the qualification of the surety’s obligation, and, hence, it is argued that, on the same principle the attachments were denied in the cases cited of conditional liabilities, the suit and attachment must fail in this case against sureties sued before the contingency on which their liability depends. But the plaintiff contends that contingency has arrived; that the debt for which the sureties bound themselves was an absolute existing debt due when the attachments were issued, and this maturity before the time stipulated in the contract, it is claimed, resulted from the actual insolvency of the brewing association, the principal debtor. On that issue there has been a great mass of testimony placed in the record and discussed in the argument. The right of plaintiff to sue sureties and attach their property is put upon the single and distinct ground that the debt had become exigible" and absolute, as to principal and sureties, by the actual insolvency of that principal. Oan this proposition, that actual insolvency matured the debt, stand under our jurisprudence?
The contention of the plaintiff that actual insolvency of the com - pany matured the debt, and hence authorized the suit and attachment against the sureties, is based on the provision of the Code that the cession of the debtor matures the debt. C. C., Art. 2054. It is claimed that as under our law the corporation can make no cession of property, hence the actual insolvency of th8 corporation is to be deemed the equivalent, in respect to maturing debts, of the judicially declared insolvency of the natural person.
In one aspect the argument of the plaintiff is contrasted with the familiar principle that the contract of the surety is to be strictly construed in his favor. No act of the creditor or debtor can change the obligation the surety has incurred and on which he is entitled to stand. The surety’s contract in this case is to pay on a fixed date, if his principal defaults. The argumenkof the plaintiff is, in effect, that the surety’s obligation is changed by the fact that the debtor afterward becomes insolvent. If that insol *939 vency shortens the term for payment of the principal’s obligation, still it is not easy to appreciate that the surety binding himself only to pay at the appointed time, and in the event of the debtor’s default, can be called on earlier because the debtor has become insolvent. The argument thus gives to the articles of the Oode, relating to the cession of the property of the debtor, the effect of changing without his consent the surety’s contract. We discover no-such purpose in the Oode. When the debtor makes a cession the-law matures his debts, not the obligation of the surety, and matures the debtor’s obligation simply and only to bring about that equal distribution the law contemplates of his property to his creditors.. But the law in bringing about this result does not, as plaintiff’s argument maintains, invade the surety’s obligation, no party to the* cession and change the time of his payment.
If the plaintiff’s argument is accepted, the term of payment of" the obligation of sureties is made utterly uncertain. With a well' defined obligation to pay in ninety days, the argument is, the surety may be called on to pay and his property attached, at any moment, after he signs, if the debtor conceives the principal debtor is insolvent and is enabled subsequently' to prove it. The argument destroys all certainty as to the most important feature of the contracts, the time of payment. A man’s pecuniary condition when his insolvency is not judicially declared must necessarily be a matter of opinion for-others. He is apt to deem himself solvent. His creditors may have a different opinion. Is it to be said the time for payment fixed by the contract is to be displaced, and the test or rather no test, supplied by the opinion well or ill founded of the debtor’s insolvency? Above all is this rule applicable to a surety. He binds himself to pay on a fixed day. Is he to be made to respond earlier, or at any time, the creditor conceives the principal is insolvent. It is the policy of the law in maturing debts of the insolvent debtor, for purposes of securing the equal distribution of his property, to establish a fixed point of time. It is essential this point of time should be certain. All transfers of property by the insolvent debtor three months before his failure are annulled, and failure is used in the same sense as insolvency. In other respects it is important that the insolvency that is to mature debts, or for other purpose, should be determined, and not depend on the supposed insolvency of the debtor. Hence the Oode itself declares it *940 is the cession of property, not actual or supposed insolvency, that matures the debt. Art. 2054. There is a line of cases that hold that the insolvency, whenever used by the Code, to mature debts or to accomplish any other purpose, means judicially declared insolvency; that is, the cession of property. Mullaudon vs. Foucher, 8 La. 582; Harrod vs. Burgess, 5 Rob. 449; Denègre vs. Milne, 10 An. 324; Seixas vs. Citizens Bank, 38 An. 443. The provision then of the Code relied on to sustain this suit and attachments maturing debts, designed only to regulate the distribution when the cession of property occurs, has no application to a corporation not within the scope of our law providing for cession to creditors. Nor does the theory of that provision sustain the argument that the maturity of the debt, especially as regards- sureties, depends on the pecuniary condition of the debtor. The maturity is fixed by the contract. When the law, for specific purposes only, declares the maturity of the debt, that maturity is fixed, i. e., by the cession of property. It follows that the theory on which this suit was instituted and the attachment issued, that the alleged insolvency of the brewing association gave a right to sue the sureties and attach their property, can not be maintained.
It is therefore ordered, adjudged and decreed that the judgment of the lower court be avoided and reversed, and the attachments issued be set aside, and plaintiff’s suit dismissed with costs.
Chief Justice Nicholls concurs in the decree.