## DIXON v. WATSON.

### No. 1040.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1932.

Carter & Carter, of Franklinton, for appellant.

Bascom D. Talley, of Bogalusa, for appellee.

**ELLIOTT, J.**

Ellis Watson leased from Christopher C. Dixon a farm on the share system for the crop year of 1931 described as: "3 acres in the northern corner of headright 41; 2388/100 acres, lot 3 of Section 10; 2750/100 acres, or lot 5 and 3910/100 acres, being N. W. ¼ of S. W. ¼ of Section 11, all in T. 1 S., R. 9 E.," situated in Washington parish.

Dixon, the owner, undertook to furnish the fertilizer, mules, plows, land and house for Watson and his family to live in, and was to receive half the crop.

Watson was to perform all the labor of planting, cultivating, and gathering the crop, feed himself, and receive the other half.

The plaintiff alleges:

That he advanced Watson the sum of $133 on his share of the crop.

That said Watson has started his crop and purchased so many groceries and supplies in making the crop that he has apparently become discouraged and has quit working his crop, and now refuses to gather the cotton and is eating up and selling the corn, potatoes, and other parts of the crop without giving to petitioner the half that is due him.

That said Watson is working for other people instead of gathering his own cotton, and has permitted it to become a total loss in the field, and that a writ of sequestration is necessary to protect the parties herein.

That said Watson refuses to gather the crop of cotton that now needs to be picked; says he will pick it when he gets ready, but continues to gather the corn and use it and eat it and feed it, all to the prejudice of petitioner. That, unless the court orders the crop to be gathered and conserved by the sheriff, your petitioner will lose his entire half of the crop and debt which he claims against the defendant, for which he has a lien on the other half.

That said Watson, having violated his agreement and refused to gather the crop, should be ordered to vacate the premises.

A writ of sequestration issued as prayed for, and the crop was seized.

The defendant Watson, in a preliminary appearance filed September 15, 1931, moved to dissolve the sequestration, the gist and substance of his motion being that the suit was prematurely filed; that plaintiff's averment that he had quit working his crop and was eating and selling the corn, potatoes, and other parts of the crop without giving the plaintiff the part due him was false and without foundation; that the sequestration was actuated by malice and spite on the part of said Dixon toward the mover, and without just cause or grounds therefor.

He alleges damages on account of attor-

ney's fees employed to dissolve the writ, in amount $50, four trips to Franklinton to consult attorneys and to see the sheriff in regard to. gathering the vegetables to live on, $30, and damages to crop, $30—a total of $110. He prayed that the sequestration be dissolved and for judgment in reconvention against the plaintiff for $110 on account of the wrongful issuance of said writ.

This motion to dissolve was not acted on preliminarily.

Upon October 9, 1931, defendant filed an exception urging the prematurity of the suit and at the same time, under reserve of all his rights under the exception and motion to dissolve he filed an answer to the merits.

He admits in his answer that plaintiff advanced him supplies on his crop to the amount alleged in the petition, but denied that the amount was due at the time the suit was filed.

He alleges that he worked his crop in a good workmanlike manner, but that plaintiff violated his contract, refused to furnish him further supplies to enable him to complete the crop; that he was thereby forced to make arrangements with Ott Bros. to furnish him the necessary supplies to enable him to finish the crop; that plaintiff tried by force to compel him to abandon his crop, which was in good shape, and leave the place in order that he might obtain possession of the crop without paying him a just price therefor. He alleged damages in reconvention against the plaintiff to the extent of $210; prayed that the sequestration be dissolved, that plaintiff's demand be rejected, and that he have judgment against plaintiff in reconvention for $210.

There was judgment in favor of the plaintiff as prayed for. Defendant has appealed.

The note of testimony opens with a statement by the parties in which it is agreed that defendant's answer was filed without prejudice to his rights under his rule to dissolve the sequestration and to recover damages on account of the wrongful issuance of the same.

It was agreed that the court pass on the rule to dissolve the sequestration and on the merits and on the rule to vacate prayed for by plaintiff against defendant, all at the same time.

The grounds urged by the defendant for the dissolution of the writ are so involved with each other, intricately connected and blended together by the evidence, that we will consider them all at the same time. Defendant alleges that plaintiff's charge that he (defendant) "is eating up and selling the corn, potatoes and other parts of the crop without giving to your petitioner the one half that is due him," that "he continues to gather the corn and use it and eat it up and feed it up,

all to the prejudice of your petitioner," is untrue.

The plaintiff, testifying on this subject and referring to the contemplated seizure, says that he did not know how much corn would be left in the field; they (referring to defendant) were toting it out all the time; said he would tote it out as long as it was in the field, and he would not pick the cotton. In another place he says:

"Q. How was the corn which he did gather, how was it gathered out of the field—was it in the usual way? A. How was the corn gathered? They toted 290 ears from one place in the field and 23 ears from another, getting an ear here and over yonder.

"Q. Did he gather a row and leave a row for you? A. No, Sir. He gathered two rows and took it out and later his wife came and gathered them rows out.

"Q. He gathered two rows of corn? A. He gathered two rows and 290 ears.

"Q. Where did he gather the 290 ears? A. He gathered it all in that patch in different places.

"Q. When he gathered in another place, did he gather one row and leave one row for you? A. No, Sir. He got it side by side."

Defendant says: "I just got a milling or two of corn out of the field and carried it out and had meal made out of it. That's all. I wouldn't take much to the mill at a time. I suppose I carried a bushel altogether."

There is no evidence that defendant sold any corn, dug or disposed of any of the potatoes or any other part of the crop.

Defendant owned half of the corn and stood at the time in need of bread for his family. The small quantity which he pulled and had made into new meal does not, in our opinion, justify plaintiff's charge of eating up and selling, etc. We are satisfied that defendant, in doing as he did, had no intent or desire to take any corn that he did not consider he had a right to use for the purpose stated. The corn used could and no doubt would have been amicably accounted for by defendant when it came time to divide the corn crop between himself and the plaintiff. We do not think this charge was made in good faith. In our opinion, it is not supported, and the sequestration will not be maintained on that ground.

Plaintiff charges that defendant, after starting his crop, purchased from him so many groceries and supplies that he apparently became discouraged and quit working the crop and now refuses to gather the cotton.

The evidence shows the area which the. defendant planted, and the number of bales of cotton and bushels of corn made shows that he made a good crop; such a crop as could not have been made, except by cultivation, which kept it in good growing condition from

the time it first needed work until it grew to maturity. The plaintiff and some witnesses under his influence thought the crop had not been well worked, but such evidence has no weight in the face of the crop actually produced, and the other evidence we deem more reliable.

██ Another ground for the sequestration is that defendant refuses to pick his cotton, that needs to be picked, and says that he will pick it when he gets ready. The evidence shows that defendant picked some cotton for his neighbors; he had to do it to get necessary provisions and clothing so as to be able to pick his own. But he did not unnecessarily delay nor defer picking his own cotton. He started picking within a reasonable time, and we are satisfied from the evidence that he would have continued and completed it and gathered his corn and the other crops which he had grown had it not been taken out of his power by the sequestration.

There is no evidence that plaintiff requested defendant to leave off picking for others, to pick his own; there was no need to make such a request. The evidence does not support this charge. Plaintiff cites us to Act No. 190 of 1912 and Code Practice, art. 275, par. 8 as applicable to the case. We differ with him on the subject. The act and article mentioned has reference to movables only.

The crop in question was, at the time of the sequestration, a standing crop. A standing crop is an immovable. Civil Code, art. 465.

The plaintiff has a privilege as lessor under the Civil Code, art. 2705 and art. 3217, subd. 3, and as furnisher of necessary supplies under article 3217.

██ A plaintiff may obtain a sequestration in all cases under Code of Practice, art. 275, par. 7, where he has a lien or privilege on property, upon complying with the requisites provided by law, but, when a plaintiff obtains the sequestration of a standing crop for the purpose of protecting his share of the crop under Act No. 211 of 1908, and his advances on the other share under Civil Code, art. 2705 and art. 3217, subd. 3, and art. 3217, the share of the crop and the amount advanced on the other share must be due and demandable. Code Practice, art. 158. State ex rel. Merz v. Judge, 31 La. Ann. 120; Egan v. Fush, 46 La. Ann. 475, 15 So. 539; State Nat. Bank v. Brewing Ass'n, 49 La. Ann. 934, 22 So. 48; City Inv. Co. v. Williams, 171 La. 848, 132 So. 367.

In the case Dixon v. Alford, 143 So. 679, this day decided, we sustain a writ of sequestration holding that Alford, a share tenant, had, after planting, abandoned part of the cotton planted, that the balance of the cotton crop was short, due to lack of cultivation; that Alford had finally unnecessarily delayed to commence picking the cotton, because he was not minded to pick it; that the situation was such that Dixon as landlord was in danger of losing his share of the crop and also the amount of his advances on Alford's share; that the circumstances were such that Alford would be regarded as having quit and abandoned the crop; that in such a case the share due Dixon and the account due him for necessary supplies advanced on Alford's share and to secure which a privilege as lessor and as furnisher of supplies existed in favor of Dixon would, on account of the conduct of Alford and in the absence of any agreement between the parties fixing on a time for the maturity of the account, be regarded as having matured the debt so as to authorize a sequestration for the purpose of saving the crop.

But the case mentioned must be looked on as exceptional. The present case does not class as such.

██ Defendant alleges in his motion to dissolve that the account sued on is not due until the crop is gathered; that the suit is therefore premature; that the sequestration is actuated by malice and spite, and is an effort on the part of the plaintiff to dispossess him of the leased premises by taking from him the power to pick the cotton and gather the corn, and to deprive him of his share thereof without paying him therefor.

The account sued on is annexed to and made part of plaintiff's petition. The first item charged bears date March 20, 1931; the last item that of June 26, 1931, after which there was nothing further advanced. During the time indicated, the plaintiff advanced defendant a total of $150.78, but gave him credits amounting to $20.25, leaving $133, which amount the defendant does not deny owing.

The evidence shows that there was a difficulty between the plaintiff and defendant. The exact date of the occurrence does not appear, but it is evident that it took place very shortly after the date of the last item charged on the account.

Defendant's wife called at plaintiff's store a few days after the difficulty, and requested groceries on account, which he declined to let her have. Words with her followed; plaintiff claims that she abused him. Plaintiff's version of the matter, omitting remarks that have no bearing on the difficulty, is substantially as follows:

"Q. Tell what happened with this man? A. Well, I went over to the place after the sweeps and a claw-hammer that they carried over there. I asked him about the claw-hammer and sweep and he seemed to be mad, and he says, they're all over the field. I got into the field gate—I thought I had a right to go down in my own field, but when I did he went for his knife and I says: 'Whats the matter with you, are you crazy? I didn't come here to fight I only came after my sweeper.' I turned and went back through

the lot; he followed me and says: 'I will kill you. * * *' I went outside the lot gate, picked up a hoe and put it in my car. He went right after me, on to my car, telling me he would kill me, with his knife in his hand. The last word he said to me when I left was: 'Bring me some brown mule tobacco.' I got in my car and went home.

"The next Saturday his wife came over to the store to know if I would let them have more groceries. I said: 'Ethel, it looks hard to furnish a man who says he's going to kill me.' She says: 'Yes, thats right.'

"Q. Did she attend to the business or her husband? A. She come there before, all the time. She attended to the business and I says: 'To show you that I want to be fair with you, you have been working for some one else, but I will go look at the condition of the crop and if it justifies I will put up more groceries and let you work it out.' She says: 'I don't want a damn thing you have got; John's going to furnish us.' I thought she would go—She came back in the store and demanded a statement; I says 'I can't give you a statement right now, I have got to have time to make it out.' She sat there on the counter and roasted me for an hour, until I got disgusted and left the store. When I come back she was still in there roasting me, wanting a statement. I says 'I can't make it out today, its Saturday and I haven't time; I will make it as soon as I can.' "

Defendant's version of the matter is substantially as follows:

"Q. Did you and Columbus Dixon have any trouble during the year? A. We had a little run in or two.

"Q. When? A. There at my house.

"Q. What was it? A. He accused me of something about a claw-hammer and some plow tools.

"Q. Accused you, how? A. He said the other boys on the place said I was the last one that had it and he says, 'you can get it or I'll charge you $1.25 for it.' I says, 'Well, if I find it on the place you can get it; I ain't got no use for it. I have a hatchet here and I don't need the claw-hammer.'

"Q. Then what happened? A. I started out at the gate to plowing and he wanted to look through the tools to see if I had it, and I said, 'go ahead.' He started to hit me; I got back out of the way and he turned around and picked up a hoe and I went to the house."

Further testifying, defendant denies that he drew his knife on plaintiff.

Following the occurrences mentioned there were no further good relations between the parties.

Defendant made other arrangements as to supplies. One or two of the family worked out, and in that way obtained what was needed, and the others worked the crop. The only reason we have for going as far as we have into this difficulty is that it appears to bear out defendant's averment that the sequestration is based on malice and spite. The relations of the parties point to a motive for the suit.

Plaintiff urges that defendant's crop was not being worked. As heretofore stated, the crop made refutes plaintiff on this subject.

He prevailed, he says, on Messrs. Dees and Schilling, neighbors, to call on plaintiff with the view of having him work out the crop, in which event he would furnish him further supplies. He stated to them, however, before they left him, to call on defendant; that he would rather defendant would leave the place. This expressed wish shows the main object he had in mind. These emissaries, as witnesses, say they called on defendant and delivered plaintiff's message; that defendant and his wife informed them that other arrangements had been made as to supplies, and that they would not leave the place, nor give up the crop; that they expected to realize the benefit of their work, but that they would work out the crop clean and commence work Monday. Whether the day named was the next day or not, the evidence does not show, but they worked out the crop all right, as they stated would be done.

About this time, the evidence does not enable us to state the exact date, the plaintiff made affidavits against the defendant and his wife charging them with disturbing the peace, and against defendant's son for stealing corn. While these charges were pending, plaintiff again sent Mr. Dees, this time accompanied by Mr. Painter, another neighbor, to call on defendant, in another effort to get him to move. The substance of Mr. Painter's testimony on the subject is as follows: "Mr. Dixon asked us to go over there. There was a disagreement between them. Dixon wanted us to tell Mr. Watson, if he would vacate the place and move off and turn the crop over to him, he would give him the debt and withdraw some papers there was against him, if he would move. They couldn't get along. Mr. Watson said he wouldn't move unless plaintiff paid him $25.00. If he would give him $25.00 he would vacate the place and turn it over to him. I went back to Mt. Hermon and told Mr. Dixon what he said. Mr. Dixon said he might give him $10," etc.

Plaintiff's offer to withdraw the papers, charging defendant and his wife with a misdemeanor and his son with stealing, if defendant would give up his crop and leave the place, indicates a motive for the charges and an effort made to use them for the purpose of coercing defendant into giving up his crop and moving from the place, charged by defendant in his motion to dissolve.

The plaintiff refused to pay the $25. The evidence indicates that the charges that

plaintiff offered to withdraw resulted in nothing. In the meantime the crop planted by defendant was growing to maturity. In order to support himself and family, defendant went out and picked several bales of cotton for neighbors, but did not unduly defer picking his own.

The present suit was filed on Monday August 31, 1931. The sheriff's deputy, accompanied by the plaintiff, coming the same day to execute the writ, found plaintiff and his family in his field picking his cotton. The hour of the day does not appear, but the plaintiff had already picked about 300 pounds, which indicates that he must have picked the previous Saturday. The sheriff, finding that the defendant was picking cotton and had previously picked, as stated, asked plaintiff if he should seize the crop and plaintiff said "Yes," upon which the officer seized the crop.

The evidence shows that defendant's financial condition was such that he could hardly be expected to find a bondsman to enable him to bond out the crop. Plaintiff did not choose to do it, consequently the crop had to be gathered by the sheriff.

The evidence shows that accounts for advances made on crops are ordinarily due and should be paid as the crop is gathered. And, when the tenant has planted, faithfully worked, and made a crop on the share system, and has done nothing to justify a sequestration, the landlord cannot make use of the forms of the law to take away from the tenant the power and authority to pick the cotton, gather the corn, and dig the potatoes, etc., in advance of the ordinary season and before the debt for advances becomes due, pursuant to the understanding of the parties at the time the contract of lease was entered into.

In this case the evidence justifies the conclusion that plaintiff made a wrongful and illegal use of the forms of the law against Watson, for the purpose of preventing him from picking the cotton, gathering the corn, and other crops he had made, and to compel him to vacate the leased premises before the end of the cropping season without having given him a reasonable opportunity to get the full benefit of his work. The writ will therefore be dissolved, with damages, at the cost of the plaintiff.

 Defendant is entitled to recover damages of the plaintiff, claimed in his motion to dissolve, as follows: $50 on account of attorney's fees for dissolving the writ, and $30 for damages to crop, but the item claimed by him on account of trips to Franklinton is refused and rejected. He is not entitled to the damages claimed in his answer, and the same are now refused.

The prayer in his answer that plaintiff's suit be dismissed will be granted, reserving to plaintiff the right to bring his action in due time. Code Practice, art. 158. Plaintiff is entitled to privilege as claimed.

More than a year has elapsed since the suit was filed, and the crop seized has no doubt been disposed of; this fact will be taken into account.

The judgment appealed from is contrary to the law and the evidence, and is therefore erroneous and will be annulled, avoided, and set aside.

For these reasons, the judgment appealed from is annulled, avoided, and set aside; the sequestration granted is dissolved, the writ annulled, and plaintiff's suit is dismissed.

It is decreed that the defendant, Ellis Watson, have judgment against the plaintiff, Christopher C. Dixon, for $80, with legal interest thereon from August 31, 1931, until paid.

Defendant, Watson, is indebted to the plaintiff, Dixon, for necessary advances on his (Watson's) share of the crop to the extent of $133, with legal interest thereon from December 31, 1931, until paid.

It is ordered that the sheriff of Washington parish deliver to the defendant, Ellis Watson, as soon as this judgment becomes final, his half and share of the entire crop sequestered herein, or, in case it is no longer in his possession, that he account to and pay him the value of same at the time it was sequestered; but in either event the sum of $133 with legal interest thereon from December 31, 1931, is to be deducted from defendant's share and paid to the plaintiff in satisfaction of his privilege as lessor and furnisher of necessary supplies and his said account herein.

It is ordered that the plaintiff Christopher C. Dixon pay all costs in both courts.