### DIXON v. ALFORD.
### No. 1041.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1932.

Carter & Carter, of Franklinton, for appellant.

Bascom D. Talley, of Bogalusa, for appellee.

ELLIOTT, J.

Christopher C. Dixon leased to Jim Alford a farm on the share system for the crop year 1931 described as 80 acres of land more or less in headright 42 T. I. S., R. E., St. Helena meridian, known as the Hosea Miller place; bounded north by lands belonging to the estate of C. R. Tate and lands of C. A. Brock, east by George Breland, south by Bennie Morris, and west by Lewis Miller, situated in Washington parish.

Dixon the owner undertook to furnish fertilizer, mules, plows, and house for Alford and family to live in, and was to receive half of the crop. Alford was to perform the labor in making the crop, feed himself, and have the other half.

The plaintiff alleges:

That said Alford has started his crop and has purchased so many groceries and supplies in making the crop that he has apparently become discouraged and has quit working the crop, and now refuses to gather the cotton, and is eating up and selling the corn, potatoes, and other parts of the crop, without giving petitioner the half that is due him.

That he is working for other people instead of gathering his own cotton, and is permitting it to become a total loss in the field.

That he refuses to gather the crop of cotton which now needs to be picked, and says he will pick it when he gets ready; but continues to gather the corn and use it and eat it up and feed it up, all to the prejudice of your petitioner. That, unless a writ of sequestration issues and the court orders the crop to be gathered and conserved by the sheriff, he will lose his half of the crop, and the debt which he claims against Alford as lessee and for which he has a privilege on the other half will be a total loss.

That said Alford, having violated the agreement and refused to gather the crop, should be ordered to vacate the premises.

A writ of sequestration was issued, a rule to vacate was served, and the crop in question was taken in custody by the sheriff. Neither party bonded out the crop. It therefore became necessary for the sheriff to gather it under the orders of the court.

The defendant, Alford, in a preliminary appearance filed September 14, 1931, ruled the plaintiff into court to show cause why the sequestration should not be dissolved on the ground that he had carried out the contract on his part, but that plaintiff refused to carry it out on his part; that the account for groceries sued on by plaintiff was not due, and that plaintiff's suit is premature; that plaintiff's averment that he (defendant) was eating up and selling the corn, potatoes, and other parts of the crop without giving plaintiff the part due him under the agreement was false and without foundation and that the sequestration was actuated by malice and spite.

He alleges damages to the extent of $50 on account of attorney's fees for dissolving the writ, $30 for trips to Franklinton to consult attorney and see the sheriff in regard to gathering vegetables to live on, $10 for the wrongful seizure of his individual crop, and $30 for damages to the crop, a total of $130.

This rule does not appear to have been answered.

The record shows that on October 9, 1931, the defendant filed a plea of prematurity, and, under reserve of all his rights under the motion to dissolve, he, on the same day, presumably at the same time, filed an answer. In his answer he reaffirmed all the grounds on which he had moved for the dissolution of the writ.

He admits that he is due the plaintiff the sum of $134.27 on account of advances, but denies owing the further sum alleged by the plaintiff. He reavers that it was not due at the time the suit was filed, reiterates that the sequestration was based on malice and spite, alleges that plaintiff agreed to furnish him sufficient groceries, clothing, etc., to enable him to make a crop, and did not comply with his contract; that he and his family were forced to go out and work for other farmers in order to get the necessaries on which to live; that he completed the crop, and, in making preparations to gather the same, applied to plaintiff for sacks in order to enable him to pick the cotton. That plaintiff refused to furnish him sacks, and did all in his power to force him to leave the place and deliver the crop to him without paying him (defendant) a just price therefor.

He claims $100 damages on account of plaintiff's refusal to furnish him necessary supplies to finish the crop and $120 on account of the wrongful issuance of the writ, a total of $220. He prays that plaintiff's demand be rejected and that he have judgment against the plaintiff in reconvention for $220.

There was judgment in favor of the plaintiff for $139.29; the sequestration was sustained, and the privilege prayed for by the plaintiff was recognized and ordered enforced. The defendant has appealed.

In taking up the case, the parties entered into an agreement that the answer had been filed without prejudice to defendant's rights under his rule to dissolve the sequestration and claim damages on account of the wrongful issuance of the writ. The entire case was to be tried on the merits. The court was to pass on the rule to dissolve and on the merits at the same time. The rule to vacate was also to be passed on at the same time.

Defendant's averment that the account sued on was not due at the time the suit was filed, urged, as a ground for the motion to dissolve, the further ground that plaintiff agreed to furnish defendant necessary supplies to enable him to plant, cultivate, and gather the crop, and then, after making some advances, refused to advance sufficient for the purpose, that the averments in plaintiff's petition urged as grounds for the sequestration were false and untrue, and that the sequestration was actuated by malice and spite, are so intricately connected and blended that we find it necessary to consider the entire matter together.

The account sued on commences on January 7, 1931, and ends on May 23, 1931. At this time plaintiff had advanced to Alford on his share of the crop $165.49, but Alford was entitled to $19.56 as a credit, leaving, according to plaintiff's account, $145.29 due the plaintiff.

On or about May 30, 1931, defendant requested further advances; the plaintiff declined to let him have the amount, demanding that it be reduced to half. Defendant would not submit to that.

No further advances were made after May 23d.

Following the disagreement of May 30th, defendant worked for others, and in that way obtained supplies to do such further work as was done in cultivating the crop.

■ We will first consider plaintiff's averment that the defendant is "eating up and selling the corn, potatoes and other parts of the crop without giving to your petitioner the one half that is due him," and that " * * * he continues to gather the corn and use it and eat it up and feed it, all to the prejudice of your petitioner."

It is true the defendant, without notice to plaintiff, pulled on one occasion a small amount of corn, less than a bushel, which he

shelled and had ground into meal, but his explanation satisfies us that he had no intent or desire, in doing as he did to take anything that he considered he did not have the right to do in that respect. He owned half the corn, and stood at that time in need of bread for his family. This small quantity of new corn pulled from two particular rows for the purpose of having made some new meal could and no doubt would have been accounted for by defendant when the corn crop was divided.

It is not claimed that he took a potato or anything else out of the crop.

The plaintiff, as a witness, could not remember that he had authorized his attorney to make this charge against the defendant. We are satisfied that he did and that it was untrue.

■■■ But, on the subject of not working the crop and not picking the cotton, we have come to the conclusion that plaintiff had legal grounds for fear and complaint on that score.

The defendant admits that his crop was short, due to the fact that, after May 30, 1931, it had not been properly worked. The defendant testified that he needed at the time supplies of provisions which plaintiff refused to furnish; that he and his family were compelled, as a result, to go out and work for other farmers in order to get food and clothing; that, supporting himself in the way stated, he completed the crop as best he could; that if plaintiff had furnished him amounts necessary to enable him to devote his entire time to the cultivation of his crop, and to the picking of his cotton, there would have been no loss nor shortage in the crop nor necessity for him to pick cotton for others.

The evidence indicates that plaintiff became dissatisfied about cotton-scraping time. Six or seven acres of cotton that had been planted had never been scraped and was lost, and the balance of the crop needed work. Whether this was before or after the disagreement about advances, the evidence is not clear. Plaintiff offered to send hands and teams to the place, work out the crop, and charge to defendant's account the service at $1 per day for each hand, which was the usual price of farm labor, but defendant refused to permit plaintiff to send this help, insisting that under their contract he had the right to cultivate the crop; that it was plaintiff's duty to furnish him the amount of supplies he needed; and that, upon being so furnished, he would himself work out the crop.

The evidence does not show that, at the time the parties entered into their agreement, there was anything said as to the amount to be advanced or the period of time during which advances were to be made, but it seems that the plaintiff expected, without any express agreement on the subject, to advance defendant necessary supplies of provision and clothing to enable him to plant, cultivate and gather the crop, and that defendant in a like way expected advances, but, as already stated, no particular amount nor period of time during which advances were to be made was discussed by the parties.

We have considered the testimony offered to show custom on the subject, but no custom can require a landowner to continue advancing his farmer tenant when it is seen that the tenant is not working and that the anticipated crop cannot on that account be expected. It is our opinion that defendant was not working as actively as he should have been.

In such a situation we agree with the lower court that plaintiff was not bound to continue furnishing the defendant all the supplies he needed for support, because the implied conditional prerequisite undertaken by the defendant was that the crop was to receive needed work. The failure of the anticipated crop, due to lack of cultivation, and resulting loss of rent and loss of the supplies furnished, was at the time apparent to the plaintiff.

At the time of the trial four bales of cotton had been picked by the sheriff.

In addition, there had been about four hundred pounds picked and stored in a cotton house, and witnesses estimated that there remained about 500 pounds unpicked in the field.

Defendant testifies that his cotton was not carefully picked, but was wasted in the field; that, if it had been carefully picked and none wasted, there would have been about eight bales. Some witnesses called by defendant indicate by their testimony that there was waste and loss in picking the cotton; but the preponderance of the testimony on the subject is that, whatever loss occurred, if any, was due to the cockleburrs and grass which had overgrown the cotton, making closer picking impossible.

When all the testimony on the subject is taken into account, it cannot be said that there was any appreciable loss of cotton due to the way in which it was picked. The evidence developed that the sheriff had cut and housed eleven wagon loads of hay from the ground that had been planted in cotton. Such a quantity of hay is a mute but strong argument against the defendant in regard to the amount of work he had bestowed on his cotton. Defendant admits in his testimony that, if his cotton had been worked as it should have been, it would have made 12 or 14 bales, and his testimony on the subject is well supported.

When the cotton crop, such as it was, and the condition it was in, matured and it came

time to pick, defendant knew that his half of it would be required to pay plaintiff the amount he owed him; consequently he saw nothing in his own cotton for himself. Some of his neighbors had picked out 2, 3, some 4 bales, but defendant had not picked any of his own, although at least half of it was open and needed picking, and he had picked several bales for others.

He testifies in explanation that he was forced to pick cotton for others in order to get necessary supplies of provision and clothing to enable him to pick his own, but it appears to us from the evidence on the subject that defendant unnecessarily delayed to commence picking his own cotton.

He endeavors to excuse his delay to commence by saying that he applied to plaintiff for sacks, that plaintiff promised to get him sacks, but neglected or delayed to bring them. The evidence on this subject has received our consideration. Defendant had plenty of sacks, but he says they were too small; if so, as it was his duty to pick the cotton, we think he should not have delayed as he did, but called on the plaintiff for larger sacks. He could have obtained them by going after them, but he did not do it.

Defendant's excuse that he did not commence sooner because he did not have the necessary sacks is not, in our opinion, satisfactory.

The evidence shows that the plaintiff called on defendant and wanted to know if he was going to pick his cotton, and, if so, when, and the defendant replied that he was going to pick it when he could, which was very indefinite.

This answer being unsatisfactory, the plaintiff on August 31, 1931, filed the present suit.

The crop in contest was a standing crop at the time the suit was filed. A standing crop is an immovable. Civil Code, art. 465. We therefore do not base our opinion and decree herein on Act No. 190 of 1912. The act, as well as Code Practice, art. 275, par. 8, has reference to movables and is therefore not applicable to the present case. The case Bomer-Ferguson Co. v. Shapiro, 148 La. 736, 87 So. 729, is based on a contest which involved movables.

But the plaintiff Dixon had seen six or seven acres of cotton abandoned and lost that had been planted and on which his advances were partly based, the balance not sufficiently worked, so that the crop produced amounted to only about one-third of that which should have been made. This loss and shortage served to reduce the expected share, as well as the security for his advances; therefore, when defendant, after picking several bales for others, procrastinated in the matter of commencing to pick his own cotton, we think under the situation that plaintiff was justified in preventing total loss by instituting suit and having the crop sequestered, without further waiting to see what defendant was going to do. The situation appears to have justified him in fearing that longer delay on his part to sue would only tend to lessen the share which he might expect as rent, as well as the other share to which he must look for payment of his advances.

■ The amount due on account for advances may, under the circumstances, be looked on as due and payable. The case of Bomer-Ferguson Co. v. Shapiro, 148 La. 736, 87 So. 729, appears to be an authority for this position.

Under the terms of Act No. 211 of 1908, the plaintiff was the owner of an undivided half of the crop. Defendant was in charge of the entire crop for the purpose of picking the cotton and gathering the corn. The situation was such that we think the terms of Code Practice, art. 274, as construed in Interstate Land Co., Ltd., v. Doyle, 120 La. 46, 44 So. 918, a further authority for the sequestration.

The corn and potatoes and some other things seized had not been gathered at the time of the trial. Therefore the amount of corn and potatoes made cannot be determined at the present time.

The plaintiff has a right to a sequestration in all cases where he has a lien or privilege on property, upon complying with the requisites provided by law. Code Practice, art. 275, par. 7. Plaintiff has a privilege as lessor under the Civil Code, art. 2705, and article 3217, subd. 3, and as furnisher of necessary supplies, under article 3217.

There is no contest about anything decided in the lower court, except plaintiff's right to sue at the present time and to have the crop sequestered.

We find that the plaintiff had the right to sue and to have the crop sequestered, that the sequestration was properly maintained, and that defendant's demand in reconvention was properly rejected.

Judgment affirmed, defendant-appellant to pay the cost in both courts.